[No. B164991. Second Dist., Div. Two. Apr. 6, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT RICHARDSON, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Lance E. Winters and Timothy M. Weiner, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**NOTT, J.**—Appellant Robert Richardson was convicted of two counts of first degree burglary. The principal issue before us is whether the simultaneous burglary of two bedrooms in a single apartment constitutes two separate offenses. Under the facts presented, we conclude that it does not.

We reverse the judgment of conviction and strike the sentence as to count two.

## BACKGROUND

Appellant, who is 35 years old, has had a drug problem since his teenage years. His sister, Barbara Mayo, has attempted to help him turn his life around by giving him money and shelter on many occasions.

In June 2002, Ms. Mayo shared a two-bedroom apartment with her longtime friend, Patricia Gesualdi. Ms. Mayo occupied one bedroom, and Ms. Gesualdi the other. Neither bedroom was equipped with exterior locks, and Ms. Mayo stored clothing in Ms. Gesualdi's closet.

That same month, appellant came to Ms. Mayo's apartment, claiming to be clean and sober, and asked if he could stay there for a couple of weeks. After obtaining the consent of Ms. Gesualdi, Ms. Mayo allowed appellant to stay in the apartment on condition that he sleep on the couch and that he not borrow or take anything without permission. Ms. Mayo gave appellant a key to the apartment.

On July 4, 2002, Ms. Gesualdi left for a family emergency in Florida. After her departure, Ms. Mayo noticed that some quarters were missing from a special jar in her (Ms. Mayo's) bedroom. Suspecting that appellant was involved, Ms. Mayo asked him to leave and to return the apartment key, which he did. On July 7, 2002, Ms. Mayo departed for Florida. Before Ms. Mayo left, Ms. Gesualdi called and asked Ms. Mayo to check on the jewelry in Ms. Gesualdi's room. Ms. Mayo did so, and found everything to be in order. Both women returned to California in the early hours of July 14, 2002. Later that morning, Ms. Gesualdi discovered that her jewelry, a portable compact disc player, and a pair of sunglasses were missing. Ms. Mayo found that a jar of quarters and a wicker container of gold dollars, silver dollars and half-dollars had been emptied. Also missing was a picture of appellant and Ms. Mayo, taken when the two were children.

The two women filed a police report. Subsequently, appellant admitted to Ms. Mayo that he took the items and sold them to an unknown person.

Appellant was charged with two counts of first degree burglary, and elected to represent himself. A jury convicted him, and he was sentenced to the midterm of four years on count 1, plus 16 months (one-third the midterm) on the second count, plus eight months on an unrelated probation violation, for a total of six years.

This appeal followed.

## CONTENTIONS ON APPEAL

Appellant contends that the trial court erred in: (1) instructing the jury that his entry into two bedrooms of the same apartment constituted two separate acts of burglary; and (2) refusing to appoint counsel to represent him at sentencing.

## DISCUSSION

1. *The trial court erred in instructing the jury that appellant's entry into separate rooms of a single-family residence constituted separate acts of burglary*

Under Penal Code section 459,[1] burglary is committed when a person "enters any house, room, apartment, tenement, . . . with intent to commit grand or petit larceny or any felony." Section 460, subdivision (a) provides that "[e]very burglary of an inhabited dwelling house . . . or the inhabited portion of any other building is burglary of the first degree." The trial court instructed the jury that a person who enters a building, or any room within a building, with the intent to steal, is guilty of burglary.[2] The trial court also instructed that a room within an inhabited dwelling house is a structure.[3]

---

[1] All further statutory references are to the Penal Code.

[2] The trial court gave the following modified version of CALJIC No. 14.50 to the jury as follows: "Defendant is accused in Counts 1 and 2 of having committed the crime of burglary, a violation of section 459 of the Penal Code. [¶] Every person who enters any building, or any room within a building, with the specific intent to steal, take, and carry away the personal property of another of any value and with the further specific intent to deprive the owner permanently of that property is guilty of the crime of burglary in violation of Penal Code section 459. [¶] A building is a structure[.] [¶] It does not matter whether the intent with which the entry was made was thereafter carried out. [¶] In order to prove this crime, each of the following elements must be proved: [¶] 1. A person entered a building; and [¶] 2. At the time of the entry, that person had the specific intent to steal and take away someone else's property, and intended to deprive the owner permanently of that property."

[3] The trial court gave the following modified version of CALJIC No. 14.52: "An inhabited dwelling house is a structure which is occupied and currently used as a dwelling. It is inhabited although the occupants are temporarily absent. [¶] A structure is part of an inhabited dwelling if it is functionally interconnected with and immediately contiguous to other portions of the dwelling house. [¶] 'Functionally interconnected' means used in related or complementary ways. 'Contiguous' means adjacent, adjoining, and in actual close contact. It is not necessary that there be interconnecting doors. [¶] A room within an inhabited dwelling house is a structure."

Appellant contends that the trial court erred in giving those instructions, which resulted in his conviction for multiple burglaries.[4]

■ The purpose of the burglary laws is to forestall situations that are dangerous to personal safety caused by the unauthorized entry of an intruder into an inhabited dwelling. (*People v. Thomas* (1991) 235 Cal.App.3d 899, 906 [1 Cal.Rptr.2d 434].) Entry into any type of room, such as an office, women's restroom, or ticket office, with the requisite intent, constitutes a burglary. (*People v. Elsey, supra*, 81 Cal.App.4th at p. 955).

■ As stated in *People v. O'Keefe* (1990) 222 Cal.App.3d 517, 521 [271 Cal.Rptr. 769], a different burglary occurs each time the perpetrator enters into a separate dwelling space if a new and separate danger is posed to each of the occupants upon entry into each dwelling.

The People contend that here, the individual bedrooms constituted two separate dwelling places because the two victims were not family members living in a single-family residence, but were roommates sharing an apartment. We are not convinced that this distinction supports a conviction for multiple burglaries. Entry into multiple rooms in a single structure has been held to constitute separate burglaries for the purposes of sections 459 and 460 where separate dwelling places were established by occupants who had separate, reasonable expectations of protection against unauthorized entry. (See *People v. Nible* (1988) 200 Cal.App.3d 838, 844 [246 Cal.Rptr. 119, 247 Cal.Rptr. 396] [a reasonable person would expect a locked door or window to afford protection from unauthorized intrusion]; *People v. Elsey, supra*, 81 Cal.App.4th at p. 961 [each teacher had a reasonable expectation of protection against intrusion with respect to each individual locked classroom within a school campus]; *People v. James* (1977) 19 Cal.3d 99, 119 [137 Cal.Rptr. 447, 561 P.2d 1135] [separately leased offices within a commercial building constituted separate dwellings], disapproved on other grounds in *People v. Haskett* (1982) 30 Cal.3d 841, 857, fn. 6 [180 Cal.Rptr. 640, 640 P.2d 776]; *People v. Fleetwood* (1985) 171 Cal.App.3d 982, 987 [217 Cal. Rtpr. 612] [separate rooms within a hotel qualified as separate dwellings]; *People v. O'Keefe, supra*, 222 Cal.App.3d at p. 521 [separate dormitory rooms in one student dormitory hall were separate dwellings].)

Our Supreme Court, in concluding that burglaries of three different rented premises occupied by tenants who leased office space from the same building were separate burglaries, stated: "There is no doubt that if the premises had

---

[4] While appellant did not object to the challenged instructions at trial, we will review the instructions for error because an instruction that would lead to two rather than one burglary conviction affects appellant's substantial rights, which cannot be waived. (*People v. Elsey* (2000) 81 Cal.App.4th 948, 953–954, fn. 2 [97 Cal. Rptr.2d 269].)

been located in three separate buildings defendant could have been punished for three separate burglaries; he is not entitled to two exempt burglaries merely because his victims chose the same landlord. If the rule were otherwise, a thief who broke into and ransacked every store in a shopping center under one roof, or every apartment in an apartment building, or every room or suite in a hotel, could claim immunity for all but one of the burglaries thus perpetrated." (*People v. James, supra*, 19 Cal.3d at pp. 119–120.)

■ Here, in contrast to the foregoing cases, we conclude that the burglary of different unlocked rooms in a single-family residence constituted a single burglary. The policy of protecting occupants of separate dwellings will not be forwarded by characterizing the crime as a multiple burglary. Since the two women shared a two-bedroom apartment, without locks on their doors, they cannot have had a separate, reasonable expectation of protection against an unauthorized entry as outlined in the above mentioned cases. Indeed, Ms. Mayo testified that she stored clothing in Ms. Gesualdi's closet. Even though appellant knew that the two women occupied different rooms and, therefore, theoretically a new and separate danger could be posed to each woman on each entry, the typical burglar of a single-family residence will not have the benefit of that foreknowledge. As stated in *People v. Thomas, supra*, 235 Cal.App.3d at page 906, footnote 2, "whether or not a burglar knows that a room in a house is a separate dwelling of a boarder is usually fortuitous, and not determinative of whether a burglary has occurred. On the other hand, where a burglar enters several rooms in a single structure, each with felonious intent, and steals something from each, ordinarily he or she cannot be charged with multiple burglaries and punished separately for each room burgled *unless* each room constituted a separate, individual dwelling place within the meanings of sections 459 and 460." In this case, there is no evidence in the record as to appellant's intent: whether he intended to burglarize both rooms as he entered the apartment, or whether he formed the intent to burglarize a second bedroom after burglarizing the first. If appellant had burgled his sister's apartment and then had gone on to burglarize other apartments within the complex, the policy of protecting occupants with reasonable expectations of separate protections would be advanced by convicting him of multiple burglaries.

This case is not like *People v. Wilson* (1989) 208 Cal.App.3d 611, 615 [256 Cal.Rptr. 422], where the Sixth District found that entry into a locked rented room in a house was entry of a separate residence within the meaning of sections 459 and 460 because each boarder in a rented house was given a separate lock and key to his or her door. Rather, here, the women rented the apartment together as friends, and shared space in their rooms.

Nor are we convinced otherwise by *People v. Sparks* (2002) 28 Cal.4th 71 [120 Cal.Rptr.2d 508, 47 P.3d 289], upon which the trial court relied in giving the modified instructions. There, the issue was "whether a defendant's entry into a bedroom within a single-family house with the requisite intent can support a burglary conviction if that intent was formed only after the defendant's entry into the house." (*Id.* at p. 73.) In that case, the defendant came to the victim's house, selling magazines. The victim allowed the defendant to enter the house, but shortly after, asked him to leave. When the victim entered her bedroom to change her shoes, the defendant followed her into the bedroom and raped her. Our Supreme Court affirmed the defendant's conviction for first degree burglary as well as forcible rape, concluding that the defendant formed his intent to rape either prior to entering the house or after entering the house, but prior to entering the bedroom. The court rejected the defendant's argument that the word "room" in section 459 applies only to rooms for which there is an expectation of protection from intrusion into a house from outside the house, such as locked rooms. (*People v. Sparks*, at p. 76.) In doing so, the court opined that entry from inside a home, into a bedroom of the home, raises the level of risk that the perpetrator will come into contact with the occupants. (*Id.* at p. 87.) In a footnote, the court stated: "In reaching this conclusion, we emphasize that our holding does not signify that a defendant who, with the requisite felonious intent, enters multiple unsecured rooms in a single-family house properly may be convicted of multiple counts of burglary. As noted above, some California decisions have questioned whether multiple convictions might be sustained on such facts (*Thomas, supra*, 235 Cal.App.3d 899, 906, fn. 2; see also *Elsey, supra*, 81 Cal.App.4th 948, 959), and we have no occasion to consider that issue in this case, in which multiple burglary convictions are not involved." (*Id.* at p. 88, fn. 21.)

Accordingly, *People v. Sparks* does not stand for the proposition that multiple burglary convictions may be founded on a defendant taking items from several rooms within a single dwelling. We are reluctant to adopt the People's argument that the above footnoted language in People v. Sparks is irrelevant because here the two victims were roommates, rather than family members. For purposes of section 459, we conclude that the two friends had set up a single-family household. To hold otherwise would require an examination of the relationship between extended families, family not related by blood, adult offspring, visitors, and short-term and long-term guests when determining whether multiple burglary convictions may be had in a single-family dwelling. We do not intend to open the door to that possibility.

We conclude that the trial court erred in giving the modified instructions and reverse. We modify the judgment to strike count two.

2. *Whether the trial court abused its discretion in denying appellant's request for appointment of counsel at sentencing**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment of conviction is reversed as to count two and the sentence imposed as to that count is stricken. In all other respects, the judgment is affirmed.

Boren, P. J., and Doi Todd, J., concurred.

On April 8, 2004, the opinion was modified to read as printed above.

---

*See footnote, *ante*, page 802.