Filed 2/25/16

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S218233 |
| v. | ) | |
| | ) | Ct.App. 4/1 D062659 |
| HUGO GARCIA, | ) | |
| | ) | San Diego County |
| Defendant and Appellant. | ) | Super. Ct. No. SCN291820 |
| _____ | ) | |

       Section 459 of the Penal Code[1] provides, in part, that "[e]very person who enters any house, room, . . . shop, warehouse, store, . . . or other building . . . with intent to commit grand or petit larceny or any felony is guilty of burglary." In this case, defendant Hugo Garcia (Garcia) entered a commercial store in Escondido, California with the intent to commit a robbery inside. After accomplishing the robbery, Garcia took the robbery victim — a store employee — to a bathroom in the back of the business, bound her hands, and raped her. The jury convicted Garcia of aggravated kidnapping, forcible rape, and two burglaries, among other offenses. The two burglary convictions were based on the theory that Garcia's entry into the store with the intent to commit a robbery, followed by his entry into the store's bathroom with the intent to rape, constituted two burglaries rather than one. The Court of Appeal affirmed the convictions.

---

[1]    Unless otherwise specified, all statutory references are to the Penal Code.

~ SEE CONCURRING OPINION ~

What we conclude is this: the simple fact that a defendant has committed two entries with felonious intent into a structure and a room within that structure does not permit multiple burglary convictions. Where a burglar enters a structure enumerated under section 459 with the requisite felonious intent, and then subsequently enters a room within that structure with such intent, the burglar may be charged with multiple burglaries only if the subsequently entered room provides a separate and objectively reasonable expectation of protection from intrusion relative to the larger structure. Such a separate expectation of privacy and safety may exist where there is proof that the internal space is owned, leased, occupied, or otherwise possessed by a distinct entity; or that the room or space is secured against the rest of the space within the structure, making the room similar in nature to the stand-alone structures enumerated in section 459.

Though the facts are somewhat close in this case, the evidence of the bathroom's location and characteristics is insufficient to show that it provided to its occupants a separate and reasonable expectation of protection from intrusion and danger, beyond that provided by the shop itself. We therefore reverse the Court of Appeal's judgment upholding Garcia's dual burglary convictions.

I. BACKGROUND

On the afternoon of May 18, 2011, victim M. was working behind the counter at an Escondido store that provided food and other services for pregnant women and young children. Shortly after she arrived at the store, M. noticed a young man, later identified as Garcia, slowly riding a bicycle in front of the store and looking inside. M. was the only store employee working at the time. A short time later, Garcia entered the store, looked around, smiled at M., and left. Garcia subsequently reentered the store and walked up to the counter where M. was working. Garcia kept one hand in his jacket pocket while he asked M. questions about the store's welfare recipient voucher program. M. found the questions

2

"weird," and sent a text message to a coworker telling her there was a strange man inside the store and she was afraid for her safety.

Garcia then asked M. about a jar of candies on the store counter. As M. went to open the jar of candies to offer some to Garcia, Garcia pulled a gun out of his pocket. Garcia pointed the gun at M. and ordered her to hand over the money from the cash register. M. complied and asked Garcia not to hurt her. Garcia continued to point the gun at M. while asking her if she had any money. M. found a few dollars in her pants pocket and gave them to Garcia. Garcia continued to point the gun at M. and directed her to close the front door of the store. At Garcia's direction, M. removed the "open" sign from the store door and turned off the lights. M. pleaded with Garcia to leave her alone and not to hurt her.

Instead, Garcia pointed the gun at M.'s back and ordered her to walk toward the back of the store. Garcia asked M. if she had the key to the back office of the store. M. responded that she did not. Garcia then asked M. if the store had a bathroom. When M. said yes, Garcia told M. to go into the bathroom, which was located down a hallway and behind the office in the back of the store, out of sight of the main part of the store. M. refused and begged Garcia to leave her alone, telling him she had a daughter waiting for her at home. Garcia waved the gun at M., directed her into the bathroom, and ordered her to take off her clothes. M. entered the bathroom and removed her pants and blouse.

Garcia followed M. into the bathroom while continuing to point the gun in her direction. He ordered M. to remove all of her clothes and to turn around and face him. Garcia briefly left the bathroom and returned with some children's hair bands, which he attempted to use to tie M.'s hands. Because Garcia held the gun close to M.'s chest while attempting to tie her hands, causing M. to become afraid the gun would accidentally fire, M. offered to bind her own hands. After she did so, Garcia left the bathroom again and returned with more hair bands. He directed

3

M. to tie up her feet, but she was unable to do so because she was trembling with fear. As M. attempted to bind her feet, Garcia again left the bathroom.

A few minutes later, Garcia returned to the bathroom for a third time. The zipper of his shorts was down and his erect penis was exposed. He ordered M. to turn away from him and face the mirror in the bathroom. While still pointing the gun at M., he put his fingers and penis inside her vagina. Garcia then removed his fingers but continued to penetrate M. with his penis. When M. began to cry, Garcia told her to "shush" and gestured for her to be quiet as he continued to assault her.

After the sexual assault, Garcia cleaned himself with a paper towel or napkin and told M. to stay in the bathroom. M. got dressed, left the bathroom, and walked into the main part of the store, where she saw Garcia opening drawers and looking through them. Garcia ordered M. to return to the bathroom, followed her there, and then shut the door to the bathroom with M. inside. M. remained in the bathroom until she no longer heard Garcia moving about the store. After exiting the bathroom, M. found the store empty. When M. looked out the window in the front of the store, she saw Garcia driving her white sports utility vehicle out of the store parking lot. M. left the store and went to a nearby business for help.

Garcia was later convicted of, among other things, two counts of burglary, aggravated kidnapping, forcible rape, and rape with a foreign object, along with various enhancements. The verdict reflected the jury's determination that Garcia committed separate crimes of burglary when he entered the store, and then when he subsequently entered the bathroom, with the intent to commit a felony inside each space. The trial court sentenced Garcia to an aggregate term of 74 years 4 months to life.

On review, the Court of Appeal held that Garcia was properly convicted of two burglaries based on his respective entries into the store and the bathroom. The

4

court rejected Garcia's argument that his entry into the store itself "subsumed entry into the bathroom located in the back of the store" and precluded his conviction for a separate burglary offense. In reaching this conclusion, the court relied heavily on the text of the burglary statute — which prohibits the entry with felonious intent into any "room" (§ 459) — and on our decision in *People v. Sparks* (2002) 28 Cal.4th 71 (*Sparks*). In *Sparks*, we considered a defendant's conviction for burglary based on his entry into a bedroom within a single-family house with the intention to commit a felony inside. The jury had been instructed that it could convict the defendant of burglary if it found that the defendant entered the home, or any room within that home, with the intent to commit a felony inside. (*Id.* at p. 75.) We upheld the jury's conviction, holding that a burglary conviction could be supported by the defendant's entry into a bedroom with a felonious intent formed "after entering the house, but prior to entering the bedroom." (*Id.* at p. 75; see *id.* at p. 78.) Relying on portions of *Sparks* that it believed suggested an expansive definition of the term "room" in section 459, the Court of Appeal found *Sparks* to support a separate conviction for the burglary of an interior room, even when that burglary is preceded by an entry with the requisite intent into the enclosing structure. It rejected authority from other Courts of Appeal (*People v. Richardson* (2004) 117 Cal.App.4th 570, 575 (*Richardson*); *People v. Thomas* (1991) 235 Cal.App.3d 899, 905-906 & fn. 2 (*Thomas*)) suggesting that a defendant may only be convicted of a single burglary if he or she enters various rooms in a single-family home with the intent to commit felonies inside. Because the crimes in this case occurred in a commercial building rather than a "single-family dwelling," the Court of Appeal found these cases to be distinguishable.

The Court of Appeal modified the trial court's judgment to stay the sentence imposed for burglary with the intent to commit sexual assault. It affirmed the judgment in all other respects.

5

In reviewing the Court of Appeal's judgment regarding Garcia's burglary convictions, we view the facts in the light most favorable to the judgment of conviction. (*People v. Osband* (1996) 13 Cal.4th 622, 690.) We decide de novo the legal question of whether section 459 permits Garcia to be convicted on those facts of two counts of burglary. (*In re Charlisse C.* (2008) 45 Cal.4th 145, 159.)

## II. DISCUSSION

Garcia argues that he may be convicted of only one count of burglary because he entered a single structure — the store, which contained the bathroom within it — and committed crimes against the same victim during a single course of conduct. This contention parallels the argument he made to the Court of Appeal that his entry into the storefront "subsumed" his entry into any other room or structure located within it and constitutes only a single violation of section 459. He further emphasizes the lower court cases finding a defendant's entry into a single-family home and the commission of felonies in multiple rooms within it to constitute a single burglary. (See, e.g., *Richardson*, *supra*, 117 Cal.App.4th at pp. 573-577.) He claims there is no difference when a defendant enters a commercial structure and requests us to likewise find that such circumstances permit only a single burglary charge and conviction.

The People urge us to rely on section 459's language, and our interpretation of that language in *Sparks*, to resolve this case. They argue that the burglary statute criminalizes any entry into a "room" with the intent to commit a felony — including entry into a room within a larger structure, such as a bedroom within a house. (*Sparks*, *supra*, 28 Cal.4th at p. 88.) Each of Garcia's entries with the requisite intent — into the store and bathroom respectively — independently satisfies section 459's burglary definition. That Garcia committed the two crimes in sequence and within a single structure does not, in the People's view, negate either crime or otherwise require that he be charged with only a single burglary.

6

The People buttress this argument by pointing to language in *Sparks* suggesting that the Legislature meant for the burglary statute in general, and the definition of the term "room" in particular, to be given broad effect. (*Sparks*, at pp. 86-87.)

We conclude that neither party's proposed rule is quite correct. While the People are right that section 459 allows for multiple burglary convictions within the same structure in at least some cases, we agree with Garcia that a burglary does not result from every felonious entry into a room preceded by a burglary of an enclosing structure. Rather, the subsequent entry will constitute a burglary only when the invaded room provides an objectively reasonable expectation of privacy and security, distinct from that the enclosing structure itself provides, which makes the room similar in nature to the stand-alone structures enumerated in section 459. We find support for this rule in section 459's text, its legislative history, and the substantial case law to have construed the burglary statute's requirements.

The text of section 459 does not explicitly resolve the question of whether — and if so, when — multiple convictions are permitted for serial entries within a single structure. But the enumerated list of spaces that may be burgled offers a clue about the characteristics an interior space should have to permit for a stand-alone burglary conviction. That a statute contains a list of terms does not necessarily mean that the included words or phrases have a common meaning; rather, we view that list as a "guide[]" that can in many circumstances help us ascertain the meaning of particular words it contains. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1391.) Canons of construction — such as the *noscitur a sociis* canon underscoring the value of considering terms in a list in their statutory context — are not mechanical devices, but instead tools that can help us do what we always aspire to do when construing a statute: avoid redundancies, reach a reasonable conclusion about the meaning of

7

terms, and give effect to the Legislature's purpose.  (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 307-308 (*Lungren*); see also *People v. Rogers* (1971) 5 Cal.3d 129, 142 (conc. and dis. opn. of Mosk, J.) [*noscitur a sociis* canon is a way to observe whether a "common thread runs through" the terms of a statute, and places statutory terms in context rather than "in a vacuum, as if [they] stood alone in the text"].)

In light of the context provided by section 459's full list of enumerated spaces and the history of the burglary statute, we find that a room must generally possess some characteristics showing that it protects a privacy, safety, or possessory interest.  Virtually all the places in section 459's list of covered locations, with the exception of "room," are by their nature separately occupied, stand-alone structures:  apartments, warehouses, vehicles, "sealed cargo container[s]," and so forth.  This language does not necessarily suggest that a room must be separately possessed or secured to be burgled — and we cast no doubt on the many Court of Appeal decisions upholding burglaries of rooms that do not fit this definition when the defendant entered the enclosing structure without felonious intent.  (See, e.g., *In re M.A.* (2012) 209 Cal.App.4th 317, 323 [closet]; *People v. Garcia* (1963) 214 Cal.App.2d 681, 683 [enclosed storage cage within a liquor store], disapproved on another ground in *Mozzetti v. Superior Court* (1971) 4 Cal.3d 699, 706; see also *Sparks*, *supra*, 28 Cal.4th at pp. 86-87.)  But the context in which the statute uses the term "room" suggests that not all rooms are created equal when it comes to burglary.  If an entry into a room can trigger a burglary conviction after the enclosing structure has been burgled, then the room *contained within the enclosing structure* must be similar in nature to a stand-alone structure.  Put another way, Garcia is right that section 459's statutory provisions suggest that a "room" may be "subsumed" into a larger structure when it is not different in nature from the enclosing structure — that is, when it provides

no incremental security, privacy, or possessory right, as compared to the enclosing building.  Otherwise, there is no basis — at least for purposes of a successive burglary charge — to treat the interior room as distinct from its enclosing structure.  Doing so would create the statutory redundancies we endeavor to avoid.  (*Lungren*, *supra*, 14 Cal.4th at pp. 307-308.)  Far from supporting the People's argument that section 459's text permits each and every felonious entry into a room to support a separate burglary charge, the word "room" read in context suggests just the opposite.

The common law origins of the statute likewise signal that a separate security or possessory interest is required to sustain multiple burglary convictions within a single space.  The common law recognized that separately occupied structures, such as rooms "in a college or an inn of court," could be separately burgled because "each inhabitant" of such spaces has a "distinct property" interest.  (4 Blackstone, Commentaries on the Law of England 225.)  That the crime of burglary functioned in this way — even from its earlier origins — is not surprising given the offense's intended function of protecting people at their most vulnerable: when they are in areas that they consider secure.  (*People v. Davis* (1998) 18 Cal.4th 712, 720 (*Davis*) [at common law, burglary was "not an offense against property, real or personal, but an offense against the habitation," where occupants were most likely to reasonably expect privacy and security].)  Protecting distinct possessory interests of occupants within a single structure is one way of fulfilling this goal.  The existence of this "distinct" interest would mean that an inhabitant's expectation of safety or protection of his or her possessory right might not necessarily be compromised fully by a burglar's initial entry into the college, or into the other building itself.  Permitting an intruder to be convicted of a burglary for a later entry, with the appropriate intent, into the enclosed rooms would further the goal of protecting each occupant's reasonable expectations.

9

This approach is also consistent with the intended purpose we have ascribed to the burglary statute. We have construed section 459 as having two functions: to protect against the increased risk to personal safety that attends the commission of a felony inside the enumerated locations, and to prevent the invasion of an owner's or occupant's possessory interest in a space against "a person who has no right to be in the building." (*People v. Gauze* (1975) 15 Cal.3d 709, 714-715 (*Gauze*); see also *Sparks*, *supra*, 28 Cal.4th at p. 87 [describing the "personal security concerns of the burglary statute"]; *Davis*, *supra*, 18 Cal.4th at p. 720 [burglary statute is intended to protect " 'place[s] of security' " and occupants when in a "vulnerable" position]; *People v. Montoya* (1994) 7 Cal.4th 1027, 1042-1043, 1045 [concluding that one who forms the intent to facilitate a perpetrator's commission of a felony inside a structure after the perpetrator enters the structure with felonious intent may be liable for aiding and abetting burglary in part because of the "broad underlying basis" for the burglary laws, which " 'are primarily designed, . . . not to deter the trespass and the intended crime . . . so much as to forestall the germination of a situation dangerous to personal safety,' " quoting *Gauze*, *supra*, 15 Cal.3d at p. 715]; *People v. Cressey* (1970) 2 Cal.3d 836, 846 [recognizing that statutes such as the burglary law "have long protected an individual's right to the security and privacy of his home, particularly during night hours"]; see also *In re M.A.*, *supra*, 209 Cal.App.4th at p. 322 ["another policy behind the burglary statute is to prevent intrusion into an area of the home in which the occupants 'reasonably could expect significant additional privacy and security,' " quoting *Sparks*, at p. 87]; *People v. Elsey* (2000) 81 Cal.App.4th 948, 959 (*Elsey*) ["The burglary statute is meant to protect against the heightened risk to persons and property interests created by an unauthorized intrusion."].) For this reason, in *Sparks*, we found the term "room" to embrace the bedroom within the

victim's home in part because it offered the victim "significant additional privacy and security" against the defendant's felonious entry. (*Sparks*, at p. 87.)

The rule we announce furthers these purposes. It also avoids creating unnecessary redundancies. In many cases, an intruder's entry into a structure will invade an occupant's possessory interest and create a potentially dangerous situation for personal security and privacy at the moment the intruder enters — and subsequent entries into internal spaces will not heighten those risks. For instance, in the ordinary case in which a burglar enters a home, a warehouse, or a storefront, his subsequent movement throughout the structure will not meaningfully exacerbate the risk to personal security and privacy or to the occupant's possessory interest. (*Elsey*, *supra*, 81 Cal.App.4th at pp. 960-961 [noting that "family members living in the same house" are unlikely to have "different expectations" of "protection against unauthorized entry" for "each interior room"].) Similarly, when an interior room in a storefront or warehouse is open and unlocked to passersby, a reasonable person would not likely suspect that room to be owned or occupied by a distinct entity. In these cases, it makes sense to think of a defendant's initial entry into the covered structure as subsuming all subsequent entries for purposes of the burglary statute. Charging the defendant with burglary for the initial entry alone adequately accounts for the increased risk of danger and personal harm that the defendant has created. Multiple charges and convictions will be unnecessarily redundant.[2]

---

[2] Moreover, the increased risk of harm — or actual harm — that occurs in such a case can likely be addressed through other sections of the Penal Code. Even when a burglary charge is not available, the penal statutes provide various other ways to target and punish harmful activities. (*Davis*, *supra*, 18 Cal.4th at p. 723.) For instance, in this case the jury convicted Garcia not only of raping M. in the bathroom, but also of aggravated kidnapping for moving her from the front of the store into the bathroom. That additional charge accounted for the increased

*(footnote continued on next page)*

11

But in other cases, the initial entry into the structure will not account for the possibility of harm to possessory or security interests that could arise if the intruder subsequently enters interior spaces. An interior space may be different in character from its enclosing structure. It may be owned or occupied by a different entity than that possessing the overarching structure, or it may be separately secured against outside entry. The internal space could provide a separate and objectively reasonable expectation of protection from intrusion, distinct from that provided by the security of the overarching structure. When an intruder enters that space with a felonious intent, we believe it most consistent with the Legislature's intended purpose and a reasonable interpretation of the statute's text and history to permit him or her to be convicted of burglary — notwithstanding whether he or she has already committed a burglary of the enclosing structure.[3]

This conclusion underscores why we — along with the Courts of Appeal — have affirmed multiple burglary convictions when the interior rooms have characteristics that objectively demonstrate an occupant's distinct possessory or security interest, which an unauthorized entry would invade. (See *Elsey*, *supra*, 81

---

*(footnote continued from previous page)*

risk of harm the movement to the bathroom caused. (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1152.) We expect that prosecutors will still have ample resources to target the actual or potential dangers that arise from interior entries that do not implicate a separate and objectively reasonable expectation of protection from intrusion relative to the larger structure.

[3] A narrower construction would imply the presence of *more* limitations into the general term "room" than those understood to exist in other jurisdictions' more specific burglary statutes, many of which expressly provide that " 'each unit of a building consisting of two or more units separately secured or occupied is a separate building.' " (*Sparks*, *supra*, 28 Cal.4th at p. 77, fn. 7, quoting Hawaii Rev. Stats. § 708-800 and citing other state statutes.)

Cal.App.4th at p. 961; see also *People v. Nible* (1988) 200 Cal.App.3d 838, 844 [a structure may be burgled if "a reasonable person would expect some protection from unauthorized intrusions"].)  We have permitted a defendant to be separately charged, convicted, and punished for multiple burglaries when he broke into three rented office spaces leased to "tenants who had no common interest other than the fortuitous circumstance that they happened to lease office suites in the same commercial building."  (*People v. James* (1977) 19 Cal.3d 99, 119.)  We suggested in that case that the same rule would apply to a thief who broke into multiple stores in a shopping center, apartments in an apartment building, or rooms or suites in a hotel.  (*Ibid.*; see also *People v. Fleetwood* (1985) 171 Cal.App.3d 982, 987-988 [separate rooms in a hotel constitute separate dwellings under the burglary statute].)  And we affirmed a second burglary conviction for a defendant who broke the lock on the door of his sister's bedroom in the family home, entered the room, and stole items from inside.  (*People v. Abilez* (2007) 41 Cal.4th 472, 508-509 (*Abilez*).)  In all of those circumstances, the different entries would invade different possessory or safety interests.[4]

---

[4]    Indeed, the Nevada Supreme Court, interpreting a burglary statute "very similar" to our own and relying on many of the same California cases, affirmed multiple burglary convictions based on a defendant's entry into a commercial office building and several offices within that structure that belonged to the building's owners because "the owners of the [office building] had a separate expectation of privacy from invasion in each of the suites they used" inside the office building.  (*Bedard v. State* (Nev. 2002) 48 P.3d 46, 48, citing § 459; *People v. James*, *supra*, 19 Cal.3d at p. 119; *Elsey*, *supra*, 81 Cal.App.4th at p. 960; see also Nev. Rev. Stats. § 205.060, subd. 1 [providing that burglary occurs when a person enters "any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building . . . with the intent to commit grand or petit larceny"].)

13

The same is true in the scenarios that the Courts of Appeal have found to justify separate burglary convictions: entries into separate middle school classrooms, which were locked to the outside and largely located in separate buildings on the school campus (*Elsey*, *supra*, 81 Cal.App.4th at pp. 961-962); intrusions into multiple student dormitory rooms within interconnected buildings (*People v. O'Keefe* (1990) 222 Cal.App.3d 517, 521 (*O'Keefe*); and entries into separately leased and locked offices in an office building (*People v. Church* (1989) 215 Cal.App.3d 1151, 1159 (*Church*), disapproved on another ground in *People v. Bouzas* (1991) 53 Cal.3d 467, 477-480).[5]

In these cases, the invaded rooms had characteristics that a reasonable person would understand to signify a separate possessory interest or a heightened degree of protection against significant intrusions from outsiders. In some, the invaded rooms were leased, owned, or otherwise occupied by different entities, such that their entry would intrude upon separate possessory interests. (See, e.g., *People v. James*, *supra*, 19 Cal.3d at p. 119 [separately leased offices within a commercial building constituted separate dwellings]; *O'Keefe*, *supra*, 222 Cal.App.3d at p. 521 [characterizing dormitory rooms as "separate dwellings" because each student enjoys "separate privacy" in each individual room].) In others, the rooms themselves suggested an enhanced basis for expectations of security or privacy relative to the external space. The Court of Appeal in *Elsey*, for example, highlighted that the separate rooms were "locked to the outside" and

---

[5] Similarly, in refusing to expand this rule to each entry into an unsecured room within a single apartment where one occupant stored clothing in the other's room, the Court of Appeal in *Richardson, supra*, 117 Cal.App.4th at page 574, emphasized that entries into multiple rooms in a single structure can amount to multiple burglaries where the different rooms give rise to "separate, reasonable expectations of protection against unauthorized entry."

14

so likely provided enhanced protection against intrusion compared to the enclosing structure. (*Elsey*, *supra*, 81 Cal.App.4th at p. 961.) The court in *Church* found important that the burgled offices were locked — or could be locked — against intrusion from a common hallway. (*Church*, *supra*, 215 Cal.App.3d at pp. 1154-1155.)

In each of the previous cases, an intruder committed multiple burglaries by entering various spaces similar in nature to the stand-alone structures enumerated in section 459. Here, in contrast, Garcia entered an enclosing structure and subsequently entered an internal room. This case thus bears some resemblance to those in which a defendant entered various rooms enclosed within a single building or other structure. (E.g., *Richardson*, *supra*, 117 Cal.App.4th at p. 575; see *Thomas*, *supra*, 235 Cal.App.3d at p. 906 & fn.2.)

In any given case, the nature of the spaces and the reasonable expectations they engender will dictate whether multiple burglary convictions will serve the interests the burglary statute protects. For instance, the evidence might show that the interior space was owned, occupied, or possessed by a different person or entity than the enclosing structure, or otherwise provided its occupants with an enhanced expectation of privacy and security similar to the stand-alone structures enumerated in section 459. Hotel rooms, offices in an office building, and storefronts in a mall would all be examples of such spaces. Alternatively, there may be other objective indications that a room provides its occupants with an enhanced expectation of privacy and security. A locked door to an external space, a sign conveying restricted access to those present in the external space, or the location of a room in relation to a public area may demonstrate objectively reasonable expectations of privacy and security. These attributes can show that a space is similar in nature to the stand-alone structures listed in section 459.

15

Despite the People's arguments to the contrary, *Sparks* does not compel us to adopt a broader rule that eschews the significance of locks, possessory interests, or objectively reasonable expectations of privacy and security. True: in *Sparks* we suggested that the Legislature's likely purpose in including the term "room" in the burglary statute was to expand the statute's coverage to include entries into "diverse types" of spaces that, on first glance, appear dissimilar from the "dwelling house" protected by the common law offense of burglary. (*Sparks*, *supra*, 28 Cal.4th at pp. 86, 78.) And we observed in *Sparks* that the offense of burglary in California is, in many ways, broader than the offense the Model Penal Code defines and which many other jurisdictions have adopted. (See *id.* at pp. 76-77 & fns. 6-7.) But we made these observations in a very different context from the facts before us. *Sparks* presented the question of whether a defendant who enters a "room" within a single-family house with the intent to perpetrate a felony inside commits a burglary, even if he lacked that felonious intent when he entered the house itself. (*Id.* at p. 73.) The defendant in that case had entered the house under false pretenses before raping an occupant in one of the home's bedrooms. (*Id.* at p. 74.) The prosecution argued to the jury that the defendant could be found guilty of burglary if he formed the intent to rape either (1) prior to entering the house, or (2) after entering the house, but before entering the room where the sexual assault occurred. (*Id.* at p. 75.) We construed the term "room" to embrace the entry into the bedroom in affirming the legitimacy of the prosecution's second, alternative theory of the case. Our holding did not expand the burglary statute's reach, but instead only ensured that a burglary prosecution, in peculiar circumstances like those present in *Sparks*, would not founder on the potential difficulty of proving exactly when the defendant formed a felonious intent. (*Id.* at p. 78; see also *id.* at p. 87, fn. 21 ["emphasiz[ing] that our holding does not signify that a defendant who, with the requisite felonious intent, enters multiple unsecured

16

rooms in a single-family house properly may be convicted of multiple counts of burglary"].)

It is for this reason that we have relied on *Sparks* in holding that where a defendant is subject to a single burglary charge based on his or her entry into a home followed by entry into a room in that home, the jury need not agree on when he or she formed the requisite intent. (*People v. Taylor* (2010) 48 Cal.4th 574, 627-628 (*Taylor*).) The Courts of Appeal have likewise generally applied *Sparks* in this manner. (See, e.g., *Richardson*, *supra*, 117 Cal.App.4th at p. 576.) *Sparks* is thus addressed primarily to the unusual circumstance where a defendant may have committed one or more entries within section 459's meaning, but is charged with a " 'single discrete crime.' " (*Taylor*, at p. 628.) Here, by contrast, Garcia is charged with multiple burglaries based on what the prosecution characterized as separate entries into a commercial structure and an enclosed room with separate specific intents.

What we can glean from the burglary statute's legislative history also supports a more limited reading of *Sparks* than the People suggest. That history indicates that the Legislature's addition of the word "room" to section 459's predecessor (former § 58 as amended by Stats. 1858, ch. 245, § 58, p. 206 and repealed by enactment of 1872 Pen. Code, § 459) in 1858 was likely intended to avoid difficulties in proving the timing of a defendant's formation of felonious intent when an intruder committed a felony inside a building, but entered the building under arguably lawful pretenses. The introduction of the term appears to have been an attempt to adapt section 459 to more closely mirror the common law definition of the burglary offense. At common law, one had to break and enter a dwelling at night to commit a burglary. The breaking could occur before or after entry, or even by implication when one entered a dwelling with felonious intent. For instance, a person who entered a home through an open door ordinarily would

17

not be guilty of a burglary. But that same person could be convicted of burglary if, once inside, he broke into an interior room within the structure. (4 Blackstone, *supra*, at pp. 226-227.) The early iteration of the burglary statute in California did not precisely capture this possibility. In particular, section 58 of the 1850 Act Concerning Crimes and Punishments (Stats. 1850, ch. 99, § 58, p. 235; see also *Sparks*, *supra*, 28 Cal.4th at p. 78 & fn. 9) required a breaking and entry but contained no reference to post-entry breakings or breakings by implication.

This statutory configuration arguably posed an obstacle to a burglary conviction when a defendant's entry into a room followed a legal entry into the building. In an apparent effort to address this gap, the Legislature amended the statute in 1858 to include a "room" and to include the "intent to commit . . . any felony" as an alternative to the breaking. (Stats. 1858, ch. 245, § 58, p. 206; *Sparks*, *supra*, 28 Cal.4th at p. 78 & fn. 10.) Far from suggesting that these amendments broadened the burglary statute so that each felonious entry into any room constituted a separate burglary, the Legislature's actions suggest that the term "room" was incorporated to permit a defendant who entered a building legally to still be charged with burglary in appropriate circumstances. (*People v. Stickman* (1867) 34 Cal. 242, 245 [explaining that the Legislature substituted the phrase " 'any house, room, apartment or tenement' " for " 'any dwelling house, or any other house whatever' " "with the intent to leave [the previous definition] as broad as at first and to meet the doctrine advanced by some of the cases, that an entry into an unoccupied room or apartment of a dwelling house was not a burglary"].) *Sparks* provides little basis to justify the two burglary charges and convictions in this case.

Besides *Sparks*, the People also rely heavily on section 954, which provides that an "accusatory pleading" may charge "two or more different offenses connected together in their commission, or different statements of the

18

same offense or two or more different offenses of the same class of crimes or offenses, under separate counts," and that a defendant may thereafter "be convicted of any number of the offenses charged." The People suggest that this section reflects a legislative "preference" for multiple convictions that should guide our hand in this case. But we find the People's observations largely beside the point. Section 954 permits a prosecutor to charge a defendant with different offenses if a particular criminal act violates multiple statutes. It permits a prosecutor to avoid electing among statements of the offense or counts charged. (§ 954; see also *People v. Gonzalez* (2014) 60 Cal.4th 533, 535-537.) But it offers no insight into what constitutes an offense under the Penal Code in the first place — the question that we must resolve here in construing section 459.

Finally, we are concerned about the potential ramifications of the broad rule the People ask us to endorse: it would allow any entries with felonious intent into a covered structure to qualify as separate burglary offenses, with no limiting principle that we can discern. Under the People's approach, a defendant who entered every room in a single-family home and stole items within, as well as an intruder who repeatedly entered and exited the same room within a store with the intent to commit a felony inside, could be charged with and convicted of multiple burglaries. Indeed, there would have been nothing preventing the prosecution here from charging Garcia with even more than two burglaries, given that the record shows he entered and exited the store bathroom several times before sexually assaulting M. inside. We have previously expressed our skepticism about these and similar outcomes (see, e.g., *Sparks*, *supra*, 28 Cal.4th at p. 87, fn. 21; *People v. Bauer* (1969) 1 Cal.3d 368, 378; see also *Elsey*, *supra*, 81 Cal.App.4th at pp. 959-960; *Thomas*, *supra*, 235 Cal.App.3d at p. 906, fn. 2) and remain confident that such an anomalous result is inconsistent with the Legislature's intended purpose.

To determine whether Garcia was properly convicted of a second burglary for his entry into this commercial establishment's bathroom, then, we must consider whether the bathroom provided an objectively reasonable expectation of privacy and safety once the security of the store itself had been breached. We find the evidence on this question to be somewhat close given what transpired in this commercial establishment. We see no basis for believing that the bathroom was owned, possessed, or otherwise occupied by a different entity than the store itself. The bathroom was contained within the walls of the store, and a reasonable factfinder would assume that Garcia invaded the same possessory interest when entering the store and the bathroom.

But whether the bathroom bore objective indications of enhanced privacy and security for its occupants is a more difficult question. On the one hand, the bathroom was located in a back hallway, behind a set of refrigerators and outside of the view of the public entering into the main part of the store. One could access the bathroom only by leaving the main part of the store and passing the store's office — which was locked and inaccessible to members of the public. These attributes of the bathroom might convey to a reasonable onlooker that the back hallway, and rooms located off that hallway, were areas that members of the public could not enter without permission. (See *People v. Mackabee* (1989) 214 Cal.App.3d 1250, 1258.) But on the other hand, there is no evidence in the record suggesting that the bathroom was left locked to the public or other passersby; to the contrary, the record suggests that the bathroom, unlike the nearby office, could be accessed by anyone and was at best merely a limited transitory source of privacy. (Cf. *Elsey*, *supra*, 81 Cal.App.4th at p. 961; *Abilez*, *supra*, 41 Cal.4th at pp. 508-509.) The absence of this evidence significantly diminishes the possibility that a factfinder could consider the bathroom to provide a heightened expectation of privacy and security beyond what the store itself provided.

20

Applying the rule we articulate to this particular case — and despite our deferential standard of review — we are not persuaded that the record contains substantial evidence to support Garcia's second burglary conviction. (See *People v. Reyes* (1974) 12 Cal.3d 486, 496-497.) The evidence does not demonstrate that a reasonable onlooker would perceive the bathroom as providing heightened privacy and security against intrusion, even though the bathroom was located outside the main view of the store. Nor is there any indication that the bathroom was kept locked, or that access to it was in any other way restricted relative to the rest of the store. On the facts of this case, the risks to a store occupant's personal safety occurred at the moment that Garcia entered the store with the intent to commit a felony; the bathroom itself did not provide a separate, reasonable expectation of additional protection. Convicting Garcia of a second burglary was redundant and unlikely to serve the purposes of the burglary statute. Garcia should have been charged with, and convicted of, only a single burglary offense.

III.  DISPOSITION

We reverse the Court of Appeal's judgment regarding Garcia's conviction and sentence, and remand for further proceedings consistent with this opinion.

**CUÉLLAR, J.**


**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CHIN, J.**
**CORRIGAN, J.**

**CONCURRING OPINION BY KRUGER, J.**

Defendant Hugo Garcia was convicted of several offenses, including burglary, aggravated kidnapping, and rape, based on a course of criminal conduct that began with the robbery of a store and ended with the forcible rape of a store employee in a bathroom located in the back of the store. The narrow legal question before us is whether Garcia was properly convicted of two burglaries, rather than one, based on his having entered both the store and a room within the store with intent to commit a felony.

Although the Court of Appeal described the issue as one of first impression, the scenario is a common one: Burglaries commonly involve both an entry into a structure and an entry into at least one room within the structure. It is therefore telling that the People have not been able to identify, in the centuries-long history of the law of burglary, any judicial precedent for upholding multiple burglary convictions under comparable circumstances. This is because, as this court today holds, the law does not permit such a result. As the majority concludes, "the simple fact that a defendant has committed two entries with felonious intent into a structure and a room within that structure does not permit multiple burglary convictions. Where a burglar enters a structure enumerated under [Penal Code] section 459 with the requisite felonious intent, and then subsequently enters a room within that structure with such intent, the burglar may be charged with multiple burglaries only if the subsequently entered room provides a separate and

objectively reasonable expectation of protection from intrusion relative to the larger structure." (Maj. opn., *ante*, at p. 2.)

I join in that conclusion. I write separately to underscore what I understand to be the key points of the majority's ruling. California's burglary statute, Penal Code section 459 (section 459), authorizes separate burglary convictions if a burglar enters separate houses, apartments, shops, stores, or internal rooms that are functionally similar to these separate structures. Whether a burglar is subject to conviction once or twice — or even three or more times over — does not depend on the happenstance of the building's floorplan. Nor does it depend, as the People have mistakenly read our decision in *People v. Sparks* (2002) 28 Cal.4th 71 to suggest, on an abstract consideration of whether one room within a building supplies greater security or privacy than another. Certainly a central purpose of the burglary statute is the protection of privacy and security against the dangers posed by outside intruders, and as the majority today instructs, courts should consider this purpose in determining whether an entry into an internal room supports a separate burglary conviction. But courts must do so with a view to answering the ultimate question under the law: Whether separate burglary convictions are warranted because the burglar has entered two or more separate spaces that are separately protected from intrusion under section 459.

Section 459 provides, as relevant here: "Every person who enters any house, room, apartment, tenement, shop, warehouse, store, . . . or other building . . . with intent to commit grand or petit larceny or any felony is guilty of burglary." Although this list of covered locations includes the word "room," that reference must be understood in context of the other items on the list. (See, e.g., *Moore v. California State Bd. of Accountancy* (1992) 2 Cal.4th 999, 1011-1012 [describing the *noscitur a sociis* canon of construction, under which the meaning of items in a list is determined "by reference to the others"].) As the majority

2

notes, "[v]irtually all the places in section 459's list of covered locations, with the exception of 'room,' are by their nature separately occupied, stand-alone structures." (Maj. opn., *ante*, at p. 8.) Although other listed spaces, such as apartments and shops, may be enclosed within a larger structure, they, too, are functionally equivalent to stand-alone structures. As the Legislature would have been well aware, houses, apartments, and stores typically contain multiple interior rooms. The Legislature's inclusion of an unadorned reference to "room" in this list is not reasonably read to indicate an intent to separately prohibit the entry of both a building and each and every interior room the building may contain. (See *People v. Gauze* (1975) 15 Cal.3d 709, 712-713 (*Gauze*) ["[B]y carefully delineating the type of structures encompassed under section 459, the Legislature has preserved the concept that burglary law is designed to protect a possessory right in property, rather than broadly to preserve any place from all crime."].) Rather, it indicates an intent to separately prohibit entry into only those rooms that are similar in nature to the other items in section 459's list of covered places; that is, rooms that, though located within a larger structure, are functionally similar to a separate house, apartment, shop, or store. (Maj. opn., *ante*, at p. 8.)

This conclusion is consistent with the common law history that forms the backdrop to section 459. (Cf. *People v. Ceja* (2010) 49 Cal.4th 1, 10 [" ' " 'A statute will be construed in light of common law decisions, unless its language " 'clearly and unequivocally discloses an intention to depart from, alter, or abrogate the common-law rule concerning the particular subject matter . . . .' " ' " ' "].) Blackstone explained that a chambers "in a college or an inn of court, where each inhabitant hath a distinct property," could be separately burglarized, as could "a room or lodging" in a house, while occupied by a lodger. (4 Blackstone, Commentaries 225.) Although section 459 unquestionably departs in certain respects from the definition of burglary that prevailed in Blackstone's

3

day — i.e., the unlawful breaking and entering of a dwelling at nighttime with the intent to commit a felony therein (4 Blackstone, at p. 224) — there is no evidence that the Legislature, either in enacting section 459 or in amending its predecessor statute in 1858 to add the word "room," intended to depart from the common law by separately punishing both a burglar's initial entry into a building and each subsequent movement between interior rooms. (See *People v. St. Clair* (1869) 38 Cal. 137, 138; *People v. Stickman* (1867) 34 Cal. 242, 244-245.)

The People's contrary position would produce rather surprising results. It would mean that a burglar who enters a single-family home and goes from room to room in search of valuables would be subject to punishment not just once, or even twice, but as many times as there are doorways that separate one room from another. A burglar who entered a one-bedroom apartment would be subject to two convictions, whereas the burglar who entered the studio apartment next door would be subject to only one. As the majority correctly explains, this is not the law.

In fairness to the People, they did not invent their view out of whole cloth. As they have pointed out, in *People v. Sparks*, *supra*, 28 Cal.4th 71 (*Sparks*), we said that the word "room" in section 459 "must be given its ordinary meaning" (*Sparks*, at p. 87), rejecting the argument that it "applies only to those rooms as to which there is an expectation of protection from intrusion — from room to room — that is comparable to the expectation of protection from intrusion into a house from outside the house" (*id*. at p. 76). But as the majority observes, *Sparks* did not involve a defendant charged with separate burglaries of an internal room and its enclosing structure. Rather, the question in *Sparks* concerned the burglary conviction of a magazine salesman who was permitted to enter a single-family home to get a glass of water, then followed the victim into her bedroom and raped her. (*Id.* at p. 74.) The sole issue was whether the defendant's single burglary

4

conviction could be sustained if the evidence showed that he formed a felonious intent after he entered the victim's house, but before he entered the bedroom. (*Id.* at pp. 74-75.) Because *Sparks* involved just one burglary conviction, we had no occasion to address the question at issue in this case: whether, and under what circumstances, entry into an internal room will support a burglary conviction separate and apart from burglary of the larger structure of which the room is a part. Indeed, we "emphasize[d] that our holding does not signify that a defendant who, with the requisite felonious intent, enters multiple unsecured rooms in a single-family house properly may be convicted of multiple counts of burglary." (*Id.* at p. 87, fn. 21.)

Implicit in this discussion was an important distinction between two scenarios in which a felonious entry into an internal room may support a burglary conviction once its enclosing structure has been breached. First, entry with felonious intent into an internal room that, from the perspective of its lawful occupants, is functionally equivalent to a separate house, apartment, shop, or store, constitutes a burglary separate from the burglary of the enclosing structure. (See, e.g., *People v. St. Clair*, *supra*, 38 Cal. 137 [the defendant was properly convicted of burglarizing a separately occupied room in a boarding house]; *People v. James* (1977) 19 Cal.3d 99, 119 [the defendant was properly convicted of three separate burglaries based on entries into three separately leased office suites in an office building].) Second, even if the initial entry into a structure is lawful, an entry into an interior room with felonious intent constitutes a burglary of the structure itself. (See, e.g., *People v. Taylor* (2010) 48 Cal.4th 574, 628 (*Taylor*) [characterizing burglar's entries into residence and internal bedroom as different bases for concluding the defendant committed " 'a single discrete crime' "]; *People v. Young* (1884) 65 Cal. 225, 226 ["One who enters, with burglarious intent, a room of a house, enters the house with such intent. . . . If the room was in the house,

5

and the house was a building, a felonious entry into the room was a felonious entry into the building . . . ."].)**1**

The difference between these two scenarios tracks a distinction that has existed for centuries. Just as the common law permitted separate burglary convictions for separate entries into separately occupied rooms in a boarding house, so did the common law permit a conviction for burglary of the structure based on unlawful entry into an internal room. (See 4 Blackstone, *supra*, at p. 226 ["[I]f a person leaves his doors and windows open, it is his own folly and negligence; and if a man enters therein, it is no burglary: yet, if he afterwards unlocks an inner or chamber door, it is so."].) As noted, however, there is no comparable rule that separately prohibits an initial entry into a building and movement between internal rooms that are not, in effect, separate units.**2**

---

**1** With the exception of the Court of Appeal's decision in this case, subsequent decisions have understood *Sparks* as confined to the situation in which a single burglary charge is based on entry into an internal room. (See *Taylor*, *supra*, 48 Cal.4th at pp. 627-628 [observing that *Sparks* recognized "that burglary may be committed not only by an entry into a home with the requisite felonious intent, but also by an entry (with the requisite felonious intent) from within the home into a bedroom inside the home," but noting "this is not to say the evidence in this case showed the commission of two discrete burglaries requiring a unanimity instruction. Rather, the evidence and argument on alternative 'entries' bore on the issue of when defendant's felonious intent arose—whether before entry into the home and/or before entry into the back bedroom—and thus concerned the theory of his liability *for a singular burglary*" (italics added)]; *In re M.A.* (2012) 209 Cal.App.4th 317, 324 [discussing *Sparks* and concluding "a burglary committed by unlawful entry into a closet located in a residence *constitutes burglary of an inhabited dwelling house* " (italics added)]; *People v. Richardson* (2004) 117 Cal.App.4th 570, 576 [observing that "*People v. Sparks* does not stand for the proposition that multiple burglary convictions may be founded on a defendant taking items from several rooms within a single dwelling"].)

**2** Looking outside of California, I have identified no other jurisdiction that permits multiple burglary convictions based on entry into a structure and a room

*(footnote continued on next page)*

6

The People also look for support in what they understand to be "one of the main policies underlying the burglary statute" as articulated in *Sparks*: "to prevent intrusion into an area in which the occupants ' "reasonably could expect significant additional privacy and security." ' " They derive this approach from *Sparks*'s observation that "entry, from inside a home, into a bedroom of the home 'raise[s] the level of risk that the burglar will come into contact with the home's occupants with the resultant threat of violence and harm,' " and that the burglary victim in that case, "living in her family's home, reasonably could expect significant additional privacy and security when she retreated into her own bedroom." (*Sparks*, *supra*, 28 Cal.4th at p. 87.)

---

*(footnote continued from previous page)*

internal to the structure, unless the internal room serves a similar function for its lawful occupants as that served by a stand-alone structure. (See, e.g., *Bedard v. State* (Nev. 2002) 48 P.3d 46, 48 [upholding multiple burglary convictions based on the defendant's entry into a commercial office building and separate office suites within that building].) Many states have adopted the Model Penal Code's definition of burglary, which reads in relevant part: "A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with purpose to commit a crime therein . . . ." (Model Pen. Code, § 221.1, subd. (1).) As explained in the comment to this section of the Model Penal Code, "[t]he provision in Subsection (1) as to separately secured or occupied portions of buildings and occupied structures takes care of the situation of apartment houses, office buildings, hotels, steamships with a series of private cabins, etc., where occupancy is by unit. It is the individual unit as well as the overall structure that must be safeguarded. Thus, while it would violate this section for a person to make an unprivileged entry into an apartment house for the purpose of stealing money or other valuables from a common safe, it also would violate the burglary provision if an intrusion is made into a single unit, even by an occupant of another unit in the same structure." (Model Pen. Code & Commentaries, com. 3(b) to § 221.1, p. 73.)

7

The observation in *Sparks*, however, again reflects the peculiar nature of the scenario involved in that case: A guest who is permitted to enter a house, then breaches an interior room with intent to commit a felony, endangers the personal security of the house's lawful occupants in much the same way as a burglar who possesses the requisite felonious intent from the moment he or she steps across the threshold. *Sparks*'s observation did not purport to set forth a generally applicable rule for determining whether a defendant may be subject to multiple burglary convictions based on movement between internal rooms.

Nor would any rule based purely on abstract considerations of privacy and security be workable or consistent with the text and background of section 459. As this case demonstrates, "privacy and security" are flexible concepts. The Court of Appeal thought it clear that a store employee could reasonably expect additional privacy and security in the store's bathroom, versus other rooms in the store. This conclusion is understandable. Bathrooms typically do afford additional privacy and security as compared to surrounding rooms. So, too, do bedrooms, workspaces, and any number of other internal rooms within a home, store, or other location. People commonly lock bathroom doors to maintain privacy from family members, guests, and coworkers; parents may secure basement doors from accident-prone children; children may warn their parents away from their bedrooms by hanging a "keep out" sign. The spaces in which we live and work typically contain numerous indications of occupants' expectations of additional privacy and security. To treat these ubiquitous features as predicates for imposing multiple burglary convictions would mark an unprecedented expansion of the law of burglary.

That is not to say that considerations of privacy and security are irrelevant to the analysis. Indeed, we have identified the principal purpose of the burglary statute as protection of the privacy and security of a structure's lawful occupants

8

against the dangers that result from intrusion by unauthorized outsiders: " 'Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation—the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence. The laws are primarily designed . . . to forestall the germination of a situation dangerous to personal safety.' " (*Gauze*, *supra*, 15 Cal.3d at p. 715 [it is impossible to burglarize one's own home]; accord, *People v. Davis* (1998) 18 Cal.4th 712, 722 [inserting a forged check into the walk-up window at a check cashing facility does not constitute a burglary]; *People v. Montoya* (1994) 7 Cal.4th 1027, 1042-1043 [a burglary is ongoing for purposes of aider and abettor liability while the burglar remains inside the structure].) But section 459 is not framed as an all-purpose, general protection of privacy and security interests. Rather, it serves those interests in a specific way: by forbidding the entry, with felonious intent, into a house, apartment, shop, store, or an internal room that is, in effect, a separate unit — that is, a room functionally similar to a separate house, apartment, shop, or store. Thus, indicators of enhanced privacy and security interests in particular rooms, such as locks and warning signs, are relevant only insofar as they "demonstrate that a space is similar in nature to the stand-alone structures listed in section 459." (Maj. opn., *ante*, at p. 15.)

With these principles in mind, the proper resolution of this issue seems clear. Garcia does not challenge his conviction for burglary of the store itself. Had the evidence failed to support a burglary conviction based on Garcia's entry into the store, then, as in *Sparks*, the jury could properly have convicted Garcia of a single burglary based on his entry into the bathroom with felonious intent. But this case involves a different question: whether Garcia was properly convicted of two burglaries, rather than one, based on his having entered both the store and its

9

bathroom with felonious intent.  As the majority correctly explains, Garcia's entry into the store's bathroom did not invade a "separate and objectively reasonable expectation of protection from intrusion relative to the larger structure" (maj. opn., *ante*, at p. 2), since the bathroom was part of the store and not, in effect, a separate unit under section 459.  Therefore, under the law, Garcia's entry into the bathroom could not have constituted a burglary separate from his burglary of the store itself.


**KRUGER, J.**

**I CONCUR:**

**LIU, J.**


10

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Garcia
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 224 Cal.App.4th 1310
**Rehearing Granted**

_____

**Opinion No.** S218233
**Date Filed:** February 25, 2016
_____

**Court:** Superior
**County:** San Diego
**Judge:** Daniel B. Goldstein

_____

**Counsel:**

Nancy J. King, under appointment by the Supreme Court, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette and Gerald A. Engler, Chief Assistant Attorneys General, Julie L. Garland, Assistant Attorney General, Kristine A. Gutierrez, Steven T. Oetting, Lise Jacobson and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Nancy J. King
1901 First Avenue, Suite 138
San Diego, CA  92101
(858) 755-5258

Lynne G. McGinnis
Deputy Attorney General
600 West Broadway, Suite 1800
San Diego, CA  92101
(619) 645-2205