Filed 3/23/17

# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE, )
)
    Plaintiff and Respondent, )
) S231171
    v. )
) Ct.App. 4/1 D067554
GIOVANNI GONZALES, )
) Imperial County
    Defendant and Appellant. ) Super. Ct. No. JCF32479
_____ )

       In 2014, Proposition 47 created the new crime of "shoplifting," defined as entering an open commercial establishment during regular business hours with the intent to commit "larceny" of property worth $950 or less. (Pen. Code, § 459.5, subd. (a).) This provision is related to the general burglary statute, which also applies to an entry with intent to commit "larceny" or any felony. (Pen. Code, § 459.) In 1927, the theft statutes were consolidated. (Pen. Code, §§ 484, 490a; see Stats. 1927, ch. 619, §§ 1, 7, pp. 1046-1047.) Subsequent cases held the burglary statute included an entry with intent to commit nonlarcenous theft. Here we hold the electorate similarly intended that the shoplifting statute apply to an entry to commit a nonlarcenous theft. Thus, defendant's act of entering a bank to cash a stolen check for less than $950, traditionally regarded as a theft by false pretenses rather than larceny, now constitutes shoplifting under the statute. Defendant may properly petition for misdemeanor resentencing under Penal Code section 1170.18. We reverse the Court of Appeal's contrary judgment.

SEE DISSENTING OPINION

# I. FACTUAL AND PROCEDURAL BACKGROUND

In December 2013, defendant Giovanni Gonzales visited his grandmother, Josefa Valencia, and stole her checkbook. Twice during that same week, he entered a bank and each time cashed one of her checks made out to him for $125. Valencia did not sign the checks or authorize defendant to cash them.

Defendant was charged with the felonies of second degree burglary and forgery.[1] He pled guilty to burglary, the forgery count was dismissed, and he was placed on probation for three years. He subsequently admitted violating probation and probation was revoked and reinstated. When a second probation violation was alleged, defendant petitioned for recall of his sentence and resentencing under Penal Code section 1170.18. The trial court denied his petition and the Court of Appeal affirmed.[2]

# II. DISCUSSION

## A. Legal Background

### 1. *The Safe Neighborhoods and Schools Act*

In 2014, the electorate passed initiative measure Proposition 47, known as the Safe Neighborhoods and Schools Act (the Act), reducing penalties for certain theft and drug offenses by amending existing statutes. (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, pp. 70-74 (Voter Information Guide).) The Act also added several new provisions, including Penal Code[3] section 459.5, which created the crime of shoplifting. Subdivision (a) provides: "Notwithstanding Section 459, shoplifting is defined as entering a commercial

---

[1] Penal Code sections 459, 460, subdivision (a), 476.
[2] Defendant then admitted the second violation. His probation was again revoked and reinstated.
[3] Subsequent statutory references are to the Penal Code unless noted.

2

establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950).  Any other entry into a commercial establishment with intent to commit larceny is burglary."  Shoplifting is punishable as a misdemeanor unless the defendant has previously been convicted of a specified offense.  (§ 459.5, subd. (a).)  Section 459.5, subdivision (b) contains an explicit limitation on charging:  "Any act of shoplifting as defined in subdivision (a) shall be charged as shoplifting.  No person who is charged with shoplifting may also be charged with burglary or theft of the same property."

Section 1170.18 now permits a defendant serving a sentence for one of the enumerated theft or drug offenses to petition for resentencing under the new, more lenient, provisions.[4]  If the offense committed by an eligible defendant[5] would have been a misdemeanor under the Act, resentencing is required unless "the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety."  (§ 1170.18, subd. (b).)  A person who has already completed a felony sentence may petition to have his conviction designated a misdemeanor.  (§ 1170.18, subds. (f), (g).)

---

[4]     Section 1170.18, subdivision (a) provides:  "A person who, on November 5, 2014, was serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section . . . had this act been in effect at the time of the offense may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing in accordance with Sections 11350, 11357, or 11377 of the Health and Safety Code, or Section 459.5, 473, 476a, 490.2, 496, or 666 of the Penal Code, as those sections have been amended or added by this act."
[5]     The Act excludes defendants who have suffered a prior conviction for an enumerated offense.  (§ 1170.18, subd. (i).)

Defendant argued that his conduct would have constituted shoplifting under section 459.5 because he entered a commercial establishment during regular business hours with intent to take less than $950.  (§ 459.5, subd. (a).)  The prosecution countered that defendant's conduct did not constitute shoplifting because he did not enter the bank with intent to commit *larceny* but, instead, to pass forged checks, which constituted a theft by false pretenses.  This argument rests on a distinction between different types of theft.

### 2.  Theft Offenses and Their Consolidation

"Britain's 18th century division of theft into the three separate crimes of larceny, false pretenses, and embezzlement made its way into the early criminal laws of the American states."  (*People v. Williams* (2013) 57 Cal.4th 776, 784 (*Williams*).)  California's first Penal Code recognized these distinctions, containing separate provisions for each type of theft.  Former section 484 defined larceny as "the felonious stealing, taking, carrying, leading, or driving away the personal property of another."  (1872 Pen. Code, former § 484.)  The crime of larceny derived from the common law and required both a taking without the property owner's consent and asportation of the property with the intent to permanently deprive the owner of possession.[6]  (*People v. Davis* (1998) 19 Cal.4th 301, 305; *Williams*, at pp. 782-783.)  Grand larceny was a felony; petit larceny, a misdemeanor.  (1872 Pen. Code, former §§ 487-490.)

Larceny was a crime against one's possession of property.  By contrast, theft by false pretenses required that a defendant not merely take *possession*, but *title* as well.  (*Williams, supra,* 57 Cal.4th at p. 784; see *Ashley, supra,* 42 Cal.2d

---

[6]     Larceny includes larceny by trick, which involves fraudulently acquiring possession, but not title, of property.  (*Williams, supra,* 57 Cal.4th at pp. 783-784; *People v. Ashley* (1954) 42 Cal.2d 246, 258 (*Ashley*).)

at p. 258.) As originally enacted, section 532 applied, in part, to "[e]very person who knowingly and designedly, by false or fraudulent representation or pretenses, defrauds any other person of money or property . . . ." (1872 Pen. Code, former § 532.) Finally, embezzlement involves "an initial, lawful possession of the victim's property, followed by its misappropriation." (*Williams*, at p. 784.) Section 503, unchanged since the original Penal Code, defines embezzlement as "the fraudulent appropriation of property by a person to whom it has been intrusted."

The disaggregation of theft into different statutes created pleading challenges. Prosecutors had to plead the correct type of theft corresponding with the defendant's conduct, though "it was difficult at times to determine whether a defendant had acquired title to the property, or merely possession, a distinction separating theft by false pretenses from larceny by trick" or "whether a defendant, clearly guilty of some theft offense, had committed embezzlement or larceny." (*Williams, supra,* 57 Cal.4th at p. 785.) To address this difficulty, the Legislature amended section 484 in 1927 to define a general crime of "theft." Theft was defined expansively to include all the elements of larceny, false pretenses, and embezzlement.[7] The Legislature also enacted section 490a, stating that "[w]herever *any law or statute of this state* refers to or mentions larceny,

---

**7** The amended provision stated in relevant part: "Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another [larceny], or who shall fraudulently appropriate property which has been entrusted to him [embezzlement], or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor, or real or personal property [false pretenses] . . . is guilty of theft." (Stats. 1927, ch. 619, § 1, p. 1046.) The Legislature additionally amended sections 486 to 490 to change references to grand and petit "larceny" to grand and petty "theft." (Stats. 1927, ch. 619, §§ 3-6, p. 1047.)

5

embezzlement, or stealing, said law or statute shall hereafter be read and interpreted as if the word 'theft' were substituted therefor." (Stats. 1927, ch. 619, § 7, p. 1047, italics added.)[8]  This provision reflected the fact that the definition of theft encompassed all three ways in which property could be unlawfully stolen.

"The purpose of the consolidation was to remove the technicalities that existed in the pleading and proof of these crimes at common law.  Indictments and informations charging the crime of 'theft' can now simply allege an 'unlawful taking.'  [Citation.]  Juries need no longer be concerned with the technical differences between the several types of theft, and can return a general verdict of guilty if they find that an 'unlawful taking' has been proved." (*Ashley, supra,* 42 Cal.2d at p. 258; see *People v. Fewkes* (1931) 214 Cal. 142, 149.)  "The amendment to section 484 . . . is designed not only to simplify procedure but also to relieve the courts from difficult questions arising from the contention that the evidence shows the commission of some other of these crimes than the one alleged in the indictment or information, a contention upon which defendants may escape just conviction solely because of the border line distinction existing between these various crimes." (*People v. Myers* (1929) 206 Cal. 480, 484 (*Myers*).)  "The elements of the several types of theft included within section 484 have not been changed, however, and a judgment of conviction of theft, based on a general verdict of guilty, can be sustained only if the evidence discloses the elements of one of the consolidated offenses." (*Ashley*, at p. 258; see *Myers*, at p. 483; see

---

[8]     The Legislature also amended sections 951, pertaining to the form of an indictment or information, and 952, specifying the substantive requirements of a charge, to ease the pleading requirements.  (See Stats. 1927, chs. 612, 613, p. 1043.)  Specifically as to theft, section 952 was amended to state that a charge need only "allege that the defendant unlawfully took the property of another." (Stats. 1927, ch. 612, § 1, p. 1043.)

also *People v. Nor Woods* (1951) 37 Cal.2d 584, 586 (*Nor Woods*).) In other words, the crime is called theft, but to prove its commission, the evidence must establish that the property was stolen by larceny, false pretenses, or embezzlement.[9]

### 3. Burglary and the Intent to Commit "Theft"

The original Penal Code defined burglary as an entry into a specified room, structure, or craft "with intent to commit grand or petit larceny, or any felony." (1872 Pen. Code, former § 459.) The statute's reference to larceny remains unaltered to this day.

Several cases have addressed the interplay between the burglary statute and the consolidation of the theft offenses. In *Myers, supra,* 206 Cal. 480, the original information charged that the defendant had entered with the intent to commit larceny. The trial court, in recognition of section 490a, allowed the information to be amended to reflect a charge of burglary with intent to commit theft. (*Myers*, at pp. 481-482.) The defendant argued the amended information failed to state an offense. He first asserted that larceny was no longer a crime in light of section 484's amendment to excise that term. Accordingly, entry into a building with intent to commit larceny was also not criminal. Further, section 490a could not be applied to replace "larceny" with "theft" in the burglary statute because section 459 was not reenacted after passage of section 490a. (*Myers*, at p. 483; see Cal. Const., art. IV, § 9 ["A section of a statute may not be amended unless the section

---

[9] The trial court must instruct on the theory of theft applicable based on the evidence presented. (Cf. Judicial Council of Cal. Crim. Jury Instns. (2016) Bench Notes to CALCRIM No. 1800, p. 1128.) However, the jury need not unanimously agree on which type of theft a defendant has committed and "it is immaterial whether or not they agreed as to the technical pigeonhole into which the theft fell." (*Nor Woods, supra,* 37 Cal.2d at p. 586.)

7

is re-enacted as amended."]; *The Gillette Co. v. Franchise Tax Bd.* (2015) 62 Cal.4th 468, 483-484.)

The arguments were rejected. *Myers* observed that larceny continued to be a crime under section 484 and "[a]ll former elements of this offense are perpetuated and contained in section 484 as amended." (*Myers, supra,* 206 Cal. at p. 483.) *Myers* reasoned: "[T]he essence of section 490a is simply to effect a change in nomenclature without disturbing the substance of any law. It is, therefore, unimportant to dwell upon the contention that this section is ineffectual to interpret the word 'larceny' to mean 'theft' in section 459 of the Penal Code because of article IV, section [9], of the constitution, to the effect that the act revised or section amended shall be re-enacted and published at length as revised or amended. This would mean that a change of phraseology without changing the meaning can be accomplished only by a republication of every statute wherein the phrase appears. This, to our mind, is carrying the refinements of logic to the point of absurdity." (*Id.*, at p. 485; see *People v. Dwyer* (1938) 24 Cal.App.2d 639, 641-642.)

*Myers* also rejected the defendant's argument that "inasmuch as section 484 now has these three crimes included within it, by charging the intent to be that of theft, the defendant is left without sufficient information as to which particular brand of theft he is supposed to have intended by the felonious entry of the building." (*Myers, supra,* 206 Cal. at p. 485.) *Myers* reasoned no notice problem would arise from the failure to specify the type of theft "for if the defendant is told that he is charged with the felonious entry of a certain building, at a certain time, with a certain intent, which particular subdivision of the crime he is guilty of does not seem to be a matter that would prejudice his status . . . ." (*Ibid.*)

Later cases more expressly held that section 490a applied to the burglary statute, replacing the term "larceny" with the broader term of "theft." In *People v.*

8

*Bayne* (1934) 136 Cal.App. 341, the defendant contended there was a "fatal variance" between the information, which charged burglary with intent to commit theft, and the language of section 459. He argued that the term "theft" within the meaning of section 484 included types of theft other than larceny. *Bayne* held that "larceny" and "theft" were "made interchangeable" by section 490a, reasoning: "The term 'larceny,' as it is used in the definition of burglary appearing in section 459 of the Penal Code, is included within the term 'theft' as it is defined in section 484 of the same Code. Burglary of the first degree is therefore accomplished by entering a building in the night-time, *with the intent to commit either petit or grand theft*, regardless of the value of the property sought to be stolen . . . ."[10] (*Bayne*, at p. 348, italics added and omitted; see *People v. Corral* (1943) 60 Cal.App.2d 66, 70.)

*People v. Dingle* (1985) 174 Cal.App.3d 21 held that entry with intent to commit a theft by false pretenses could support a burglary conviction. The theft in question was the defendant's use of the victim's home phone to place a long-distance call without her consent. The defendant argued that entry with intent to commit this type of theft could not support a burglary conviction because it did not constitute larceny. He urged that "only larceny will support the specific theft element requirement of burglary." (*Id*. at p. 30.) *Dingle* rejected the argument: "Section 490a not only changed section 484 so that the word 'larceny' formerly used therein became superseded by the word 'theft,' but plainly means that the word 'larceny' in section 459 shall now be read and interpreted as if the word 'theft' were substituted." (*Ibid*.) It reasoned that the term "theft" embraces other kinds of unlawful takings with elements different from the elements of common

---

**10** The nighttime requirement has been deleted from the burglary statute. (See Stats. 1982, ch. 1297, § 1, p. 4786.)

9

law larceny. "We believe the act of defrauding specified in section 502.7, subdivision (a)(1) is a theft akin to false pretenses,"[11] and an intent to commit that offense is sufficient for burglary. (*Ibid.*; see *People v. Kwok* (1998) 63 Cal.App.4th 1236, 1248, fn. 5.)

Similarly, *People v. Nguyen* (1995) 40 Cal.App.4th 28 (*Nguyen*) concluded that the defendant could be convicted of burglary for entering a victim's house on the pretense of purchasing property but intending to pay with a bad check. *Nguyen* rejected the claim that only an intent to commit larceny would support a burglary conviction. Noting the consolidation of the theft offenses and the nomenclature change of section 490a, *Nguyen* reasoned "the Legislature has indicated a clear intent that the term 'larceny' as used in the burglary statute should be read to include all thefts, including 'petit' theft by false pretenses." (*Nguyen*, at p. 31.)

*People v. Parson* (2008) 44 Cal.4th 332, favorably cited *Nguyen*. *Parson* rejected the defendant's argument that he could not have been convicted of burglary if the evidence showed he entered the victim's home with intent to defraud. *Parson* reasoned: "An intent to commit theft by a false pretense or a false promise without the intent to perform will support a burglary conviction. [Citation.] Consequently, we reject the contention that defendant could not have been found guilty of burglary (or a burglary murder) for merely intending to 'con' [the victim] out of money in the manner described . . . ." (*Id*. at p. 354, citing *Nguyen, supra,* 40 Cal.App.4th at pp. 30-31.)

---

**11**    Section 502.7, subdivision (a)(1) criminalizes charging a telephone service "to an existing telephone number or credit card number without the authority of the subscriber thereto or the lawful holder thereof."

**B. Section 490a Applies to Section 459.5**

"The first principle of statutory construction requires us to interpret the words of the statute themselves, giving them their ordinary meaning, and reading them in the context of the statute (or, here, the initiative) as a whole. If the language is unambiguous, there is no need for further construction. If, however, the language is susceptible of more than one reasonable meaning, we may consider the ballot summaries and arguments to determine how the voters understood the ballot measure and what they intended in enacting it." (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 315.) "In construing constitutional and statutory provisions, whether enacted by the Legislature or by initiative, the intent of the enacting body is the paramount consideration." (*In re Lance W.* (1985) 37 Cal.3d 873, 889 (*Lance W.*).)

The Attorney General argues that use of the term "larceny" in section 459.5, coupled with labeling the offense "shoplifting," exhibited an intent by the electorate to limit that offense to the "common understanding of shoplifting," which she characterizes as taking goods from a store. The argument fails in light of the history of the burglary and theft statutes and their settled judicial construction. The drafters of the Act clearly had burglary in mind when defining "shoplifting." Section 459.5 expressly mentions the burglary statute: "Notwithstanding Section 459, shoplifting is defined as entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950). Any other entry into a commercial establishment with intent to commit larceny is burglary." (§ 459.5, subd. (a).)

That the shoplifting statute expressly mentions the burglary statute and uses the same term, "larceny," makes plain that the electorate intended "larceny" to

11

have the same meaning in both provisions. As noted, before the passage of Proposition 47, courts had long construed that term to mean theft under the mandate of section 490a. The electorate "is presumed to be aware of existing laws and judicial construction thereof." (*Lance W., supra,* 37 Cal.3d at p. 890, fn. 11.) " ' "It is a well-recognized rule of construction that after the courts have construed the meaning of any particular word, or expression, and the legislature subsequently undertakes to use these exact words in the same connection, the presumption is almost irresistible that it used them in the precise and technical sense which had been placed upon them by the courts." ' " (*People v. Lopez* (2005) 34 Cal.4th 1002, 1007.) " ' "This principle applies to legislation adopted through the initiative process." ' " (*People v. Lawrence* (2000) 24 Cal.4th 219, 231.) That the language of section 459.5 refers to the general burglary statute and imports the term "larceny" strongly suggests an intent that the term maintain its same meaning in both provisions, including application of section 490a.

Section 490a provides: "Wherever *any* law or statute of this state refers to or mentions larceny, embezzlement, or stealing, said law or statute shall hereafter be read and interpreted as if the word 'theft' were substituted therefor." (Italics added.) Section 490a contains no exceptions. Nor does any part of the ballot language accompanying the initiative indicate a desire to modify the express and inclusive language of section 490a. Indeed, the ballot pamphlet explained that "[t]his measure reduces certain nonserious and nonviolent property and drug offenses from wobblers or felonies to misdemeanors." (Voter Information Guide, *supra*, analysis of Prop. 47 by Legis. Analyst, p. 35.) The pamphlet briefly described the affected offenses, stating with respect to shoplifting: "Under current law, shoplifting property worth $950 or less (a type of petty theft) is often a misdemeanor. However, such crimes can also be charged as burglary, which is a wobbler. Under this measure, shoplifting property worth $950 or less would

12

*always* be a misdemeanor and could not be charged as burglary." (*Ibid*., italics added.) Similarly, the pamphlet explained the reduction in sentence for check forgery: "Under current law, it is a wobbler crime to forge a check of any amount. Under this measure, forging a check worth $950 or less would *always* be a misdemeanor, except that it would remain a wobbler crime if the offender commits identity theft in connection with forging a check." (*Ibid*., italics added; see § 473, subd. (b).) Likewise as to the other property crimes described, the pamphlet indicated the offenses would constitute misdemeanors if the value of the property was no more than $950. (Voter Information Guide, analysis of Prop. 47 by Legis. Analyst, p. 35.)

As to the property crimes at issue, the focus of the ballot pamphlet was on the value of the property, setting the threshold for felony treatment at $950. The ballot pamphlet expressly states that shoplifting from a commercial establishment and check forgery could not be charged as burglary and would "always" be classified as misdemeanors when the value of property was $950 or less, unless an express exception applied.

Our conclusion is also consistent with the electorate's stated reason for enacting Proposition 47. "One of Proposition 47's primary purposes is to reduce the number of nonviolent offenders in state prisons, thereby saving money and focusing prison on offenders considered more serious under the terms of the initiative." (*Harris v. Superior Court* (2016) 1 Cal.5th 984, 992; see Voter Information Guide, *supra*, text of Prop. 47, § 2, p. 70.) The Act also expressly states an intent to "[r]equire misdemeanors instead of felonies for nonserious, nonviolent crimes like petty theft and drug possession, unless the defendant has prior convictions for specified violent or serious crimes." (Voter Information Guide, text of Prop. 47, § 3, par. (3), p. 70.) These stated purposes undermine the People's position. There is no indication the electorate somehow viewed larceny

13

differently from other forms of theft. Rather, it set the amount at issue as the demarcation between felonies and misdemeanors. Proposition 47 also enacted section 490.2, which provides that "[n]otwithstanding Section 487 or any other provision of law defining grand theft, obtaining any property by theft where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950) shall be considered petty theft and shall be punished as a misdemeanor" unless a defendant has suffered a disqualifying prior conviction. (§ 490.2, subd. (a).)

The Attorney General attempts to draw a distinction between section 459.5 and section 490.2. She argues that, because section 459.5 uses the term "property" rather than the more expansive phrase "money, labor, real or personal property," the electorate intended to limit shoplifting to the theft of "tangible merchandise." Viewed in conjunction with section 459.5's application only to an entry into a commercial establishment during business hours (§ 459.5, subd. (a)), the Attorney General contends the statute's reference to "larceny" reflected the electorate's intent to limit the offense to takings colloquially understood as "shoplifting."

The argument is unpersuasive. First, section 459.5 provides a specific definition of the term "shoplifting." In doing so, it creates a term of art, which must be understood as it is defined, not in its colloquial sense.[12] Indeed, by defining shoplifting as an *entry* into a business with an intent to steal, rather than as the taking itself, section 459.5 already deviates from the colloquial

---

[12] "Terms of art are words having specific, precise meaning in a given specialty. Having its origins in Lord Coke's *vocabula artis*, the phrase *term of art* is common in law because the legal field has developed many technical words whose meanings are locked tight . . . ." (Garner, Dict. of Legal Usage (3d ed. 2011) p. 883; see also *People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 302.)

14

understanding of that term. (See Webster's Collegiate Dict. (11th ed. 2003) p. 1151.)

Second, the Penal Code defines property to include "both real and personal property" and further defines personal property to include "money, goods, chattels, things in action, and evidences of debt." (§ 7, pars. (10), (12).) Section 490.2 employs a definition of property consistent with section 7. There is no indication of an intent to use the term "property" in section 459.5 more narrowly than the definition of the same term already existing in the Penal Code. " '[W]hen the Legislature uses a term of art, a court construing that use must assume that the Legislature was aware of the ramifications of its choice of language.' " (*Ruiz v. Podolsky* (2010) 50 Cal.4th 838, 850, fn. 3.) The same principle applies to the electorate.

The People's reliance on *Williams, supra,* 57 Cal.4th 776, is misplaced. *Williams* dealt with robbery, not burglary. It addressed whether a defendant could be convicted of robbery if he purchased gift cards with fraudulent credit cards, then assaulted security guards as he attempted to leave the store. Robbery is defined as "the *felonious taking* of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211, italics added.) *Williams* concluded that "felonious taking" in the robbery statute referred to larceny only: "Because California's robbery statute (§ 211) uses the common law's phrase 'felonious taking,' and because at common law 'felonious taking' was synonymous with larceny, we conclude that larceny is a necessary element of robbery." (*Williams*, at pp. 786-787.) *Williams* noted two important differences between larceny and theft by false pretenses. First, larceny requires asportation and the offense continues until the perpetrator reaches a place of temporary safety. (See *People v. Gomez* (2008) 43 Cal.4th 249, 256.) "Because larceny is a continuing offense, a

15

defendant who uses force or fear in an attempt to escape with property taken by larceny has committed robbery." (*Williams*, at p. 787.) By contrast, theft by false pretenses does not require asportation. That crime "ends at the moment title to the property is acquired, and thus cannot become robbery by the defendant's later use of force or fear." (*Ibid*.) Second, robbery requires a nonconsensual taking, which is consistent with larceny but inconsistent with theft by false pretenses. (*Id*. at p. 788.)

*Williams* rejected the claim that section 490a should be applied to the robbery statute: "[This] theory would require us to conclude that, by enacting section 490a, the Legislature intended to alter two of the substantive elements of robbery: asportation and a trespassory taking. [Citation.] But the 1927 legislation enacting section 490a and the theft consolidation statute (§ 484, subd. (a); Stats. 1927, ch. 619, § 1, p. 1046) left unchanged the elements of theft. [Citation.] We are not persuaded that the Legislature intended to alter the elements of *robbery*, to which section 490a makes no reference whatever, while also intending to leave intact the elements of *theft*, to which it explicitly refers. As this court said more than 80 years ago, 'the essence of section 490a is simply to effect a change in nomenclature *without disturbing the substance of any law*.' " (*Williams, supra,* 57 Cal.4th at p. 789, quoting *Myers, supra,* 206 Cal. at p. 485.)

Robbery involves a taking by means of force or fear. Burglary and shoplifting do not require any taking, merely an entry with the required intent. For more than a century, entry into a store, even during business hours, with the requisite intent was understood to constitute burglary. (*People v. Barry* (1892) 94 Cal. 481, 482-483.) "[T]he underlying principle of the *Barry* case is that a person has an implied invitation to enter a store during business hours for legal purposes only." (*People v. Gauze* (1975) 15 Cal.3d 709, 713.) "A burglary remains an entry which invades a possessory right in a building. And it still must be

16

committed by a person who has no right to be in the building." (*Id*. at p. 714.) *Gauze* also noted that the burglary statute was designed primarily to forestall dangerous confrontations between intruders and occupants. (*Id*. at p. 715; see *People v. Montoya* (1994) 7 Cal.4th 1027, 1042.) Whether viewed as protecting the property interest in a building or as protecting the personal safety of those within, neither purpose is specific to larceny. Indeed, *Williams* in a footnote expressly distinguished burglary from robbery, noting that, although the use of force during a nonlarceny theft could not give rise to a robbery conviction, "if a defendant enters a store with the intent to commit theft by false pretenses (as defendant did here), and if that defendant, while fleeing, kills a store employee, that defendant can be convicted of felony-murder burglary." (*Williams, supra,* 57 Cal.4th at p. 789, fn. 4.)

The Attorney General suggests three "absurd" consequences that would result if defendant's understanding of the statutory scheme were adopted. First, she argues that section 459.5, subdivision (a)'s requirement of "entering a commercial establishment with intent to commit larceny while that establishment is *open during regular business hours*" (italics added) is inconsistent with application to types of theft other than larceny: "For example, an employee who enters the commercial establishment where she works with the intent to steal from her employer one minute before the store is officially open would commit *burglary*, while the same employee would commit *shoplifting* if she committed the offense [by entering] one minute later during business hours. To hold that 'shoplifting' applies to theft by embezzlement would therefore lead to absurd results. Accordingly, since the business hours limitation shows that 'larceny' cannot include embezzlement, 'larceny' does not mean all forms of theft."

Even if section 459.5 encompasses some, but not all, entries, that construction is no more absurd than requiring that first degree burglary be

17

committed during nighttime, which our Penal Code did until 1982. (*People v. Cruz* (1996) 13 Cal.4th 764, 770; *People v. O'Bryan* (1985) 37 Cal.3d 841, 844.) Just as the Legislature could have reasonably punished nighttime burglaries more harshly due to the heightened danger of such entries, the electorate could have concluded that entering an open business to commit a minor theft is less dangerous and more likely to be ferreted out than an entry when the business is closed. Intending to limit the crime of shoplifting to an entry during business hours says nothing about the electorate's intent with respect to what *types* of theft should be covered.

Second, the Attorney General suggests it would be absurd for the shoplifting statute to encompass any form of theft other than larceny *of openly displayed merchandise*. She posits that a contrary understanding would require a person to be prosecuted for shoplifting even if he enters a commercial establishment to commit a theft from an area of the store closed to the public, "like a back office or a private locker room . . . ." She argues the electorate could not have contemplated that such "scenarios clearly posing a danger to personal safety due to unauthorized entries—a harm that does not hinge on the value of the property taken—could no longer be charged as burglary."

Based solely on the use of the term "shoplifting," the argument discerns a limitation to "displayed merchandise." This argument is little more than a restatement of the rejected claim that the electorate intended to use "shoplifting" in the colloquial sense. Further, if the electorate had intended to limit the shoplifting statute to an entry with intent to steal retail merchandise, it could have done so by using language similar to that in section 490.5. That provision specifies, in part, the punishment for "petty theft involving merchandise taken from a merchant's premises" (§ 490.5, subd. (a)), and defines "merchandise" as "any personal

18

property, capable of manual delivery, displayed, held, or offered for retail sale by a merchant" (§ 490.5, subd. (g)(1)). No similar language is found in section 459.5.

Finally, the Attorney General suggests defendant's interpretation leads to absurd results because taking property displayed for sale is less blameworthy than taking other kinds of property, entering into areas not open to the public, or engaging in more sophisticated types of theft. She suggests that the harm from using personal identifying information, like that found on a check, "is far greater."

One might question the premise of this argument. The degree of culpability can reasonably be linked to the value of property stolen, regardless of the technique employed. In each case, the thief has a specific intent to steal. In any event, the culpability levels of the various theft offenses are policy decisions for the electorate to make. Its decision to treat various theft offenses similarly may be debated but it is not absurd.

Amicus curiae San Diego County District Attorney suggests that applying section 490a to the shoplifting statute would mean "the distinctions between the various forms of theft are now meaningless . . . ." Not so. As discussed, neither the consolidation of the theft offenses nor the nomenclature change of section 490a altered the elements of the various theft offenses. (See *Myers, supra,* 206 Cal. at p. 485; see also *Williams, supra,* 57 Cal.4th at p. 789.) Thus, a court would inform the jury that, in order to convict of shoplifting, the jury must find a defendant entered a commercial establishment during business hours with intent to commit theft, and separately instruct on the appropriate form of theft based on the evidence presented. (See CALCRIM No. 1703.)

*People v. Vidana* (2016) 1 Cal.5th 632, cited by amicus curiae, supports this conclusion. There we reasoned that a defendant could not be convicted of both larceny and embezzlement of the same property because those crimes merely constituted different formulations of the same theft offense. (*Id*. at pp. 647-651.)

19

In applying section 490a, *Vidana* observed that the terms of that provision demonstrate an obvious intent "to create a single crime of theft." (*Vidana*, at p. 648; see also *Williams, supra,* 57 Cal.4th at p. 796; *People v. Avery* (2002) 27 Cal.4th 49, 53, fn. 4.) *Vidana* did suggest that "literal application of section 490a would render many statutes nonsensical," and gave the following example: "Thus, Vehicle Code section 10502, subdivision (a) provides in part, 'The owner or legal owner of a vehicle registered under this code which has been stolen or embezzled may notify the Department of the California Highway Patrol of the theft or embezzlement, but in the event of an embezzlement . . . may make the report only after having procured the issuance of a warrant for the arrest of the person charged with the embezzlement.' Under a literal reading of section 490a, this law would instead provide: The 'owner or legal owner of a vehicle registered under this code which has been stolen or stolen may notify the Department of the California Highway Patrol of the theft or theft, but in the event of a theft . . . may make the report only after having procured the issuance of a warrant for the arrest of the person charged with the theft.' " (*Vidana,* at p. 647.)

While *Vidana* correctly notes that section 490a's application to some theft-related statutes will not be linguistically seamless, no nonsensical rendering occurs by substituting "theft" for "larceny" in section 459.5. Its definition of shoplifting would simply be "read and interpreted" as section 490a directs: "entering a commercial establishment with intent to commit [theft] while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950)." (§ 459.5, subd. (a).)

20

## C. Application of Section 1170.18

A defendant may be eligible for misdemeanor resentencing under section 1170.18 if he "would have been guilty of a misdemeanor under the act that added this section . . . had this act been in effect at the time of the offense . . . ." (§ 1170.18, subd. (a).) Under section 459.5, shoplifting is a misdemeanor unless the defendant has suffered a disqualifying prior conviction. (§ 459.5, subd. (a).)

To be eligible for resentencing, defendant must demonstrate that his crime would have been a misdemeanor if the Act was in effect when he committed the offense. The Act did not change the punishment for second degree burglary, which is an alternative felony/misdemeanor, commonly known as a "wobbler." (*People v. Williams* (2005) 35 Cal.4th 817, 820.) However, section 459.5, subdivision (b) states that "[a]ny act of shoplifting as defined in subdivision (a) shall be charged as shoplifting. No person who is charged with shoplifting may also be charged with burglary or theft of the same property." Thus, defendant would qualify for relief if he can show that his conduct would have constituted misdemeanor shoplifting, so long as he has not suffered a disqualifying conviction.[13] (See §§ 459.5, subd. (a), 1170.18, subd. (i).)

The Attorney General argues that, even if defendant engaged in shoplifting, he is still not eligible for resentencing because he also entered the bank intending to commit identity theft. Thus, his felony burglary conviction could have been based on his separate intent to commit that offense. Section 530.5, subdivision (a) applies to "[e]very person who willfully obtains personal identifying information . . . of another person, and uses that information for any unlawful

---

[13] The court retains jurisdiction to deny relief if it concludes resentencing "would pose an unreasonable risk of danger to public safety." (§ 1170.18, subd. (b).)

purpose, including to obtain, or attempt to obtain, credit, goods, services, real property, or medical information without the consent of that person . . . ." Personal identifying information includes "any name, address, [or] telephone number," as well as any "checking account number." (§ 530.55, subd. (b).)

The Attorney General relies principally upon *People v. Barba* (2012) 211 Cal.App.4th 214, which reasoned that the defendants could have committed identity theft by cashing a stolen check. "Although defendants argue that they did not actually 'use' the personal identifying information that was printed on the stolen checks, there can be no doubt that by submitting the stolen checks for cashing, defendants were relying on the personal identifying information provided on those checks to obtain money to which they were not entitled." (*Id*. at p. 228.)

Defendant counters that, even assuming he entered the bank with an intent to commit identity theft, section 459.5, subdivision (b) would have precluded a felony burglary charge because his conduct *also* constituted shoplifting. At least one Court of Appeal has agreed with this position. (See *People v. Garrett* (2016) 248 Cal.App.4th 82, 87-88, review granted Aug. 24, 2016, S236012.)

Defendant has the better view. Section 459.5, subdivision (b) requires that any act of shoplifting "*shall be charged* as shoplifting" and no one charged with shoplifting "may also be charged with burglary or theft *of the same property*." (Italics added.) A defendant must be charged only with shoplifting when the statute applies. It expressly prohibits alternate charging and ensures only misdemeanor treatment for the underlying described conduct. The statute's use of the phrase "the same property" confirms that multiple burglary charges may not be based on entry with intent to commit different forms of theft offenses if the property intended to be stolen is the same property at issue in the shoplifting charge. Thus, the shoplifting statute would have precluded a burglary charge based on an entry with intent to commit identity theft here because the conduct

22

underlying such a charge would have been the same as that involved in the shoplifting, namely, the cashing of the same stolen check to obtain less than $950. A felony burglary charge could legitimately lie if there was proof of entry with intent to commit a nontheft felony or an intent to commit a theft of other property exceeding the shoplifting limit. That did not occur here, however.

## III. DISPOSITION

We reverse the Court of Appeal's judgment. The matter is remanded with direction that it be returned to the trial court for further proceedings consistent with the holding here.

CORRIGAN, J.

WE CONCUR:

CANTIL-SAKAUYE, C. J.
WERDEGAR, J.
CUÉLLAR, J.
KRUGER, J.

23

**DISSENTING OPINION BY CHIN, J.**

On two occasions, defendant entered a bank and cashed one of his grandmother's checks, which he had stolen and made out to himself for $125. The grandmother had not signed the checks or authorized defendant to cash them. The majority holds that defendant committed the new crime of shoplifting the electorate created when it adopted Proposition 47. (Pen. Code, § 459.5, subd. (a).) (All future statutory citations are to the Penal Code.) I disagree.

Section 459.5, subdivision (a), provides as relevant: "Notwithstanding Section 459, shoplifting is defined as entering a commercial establishment with intent to commit *larceny* while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950)." (Italics added to emphasize the single word critical to this issue.)

As the majority recognizes, cashing a fraudulent check is not larceny. It is obtaining property by false pretenses. Entering a bank with intent to obtain property by false pretenses is not entering a commercial establishment with intent to commit larceny. Accordingly, defendant did not commit the crime of shoplifting as section 459.5 defines it.

The majority avoids the statute's plain language by reading the word "larceny" in section 459.5 as not meaning "larceny," but "theft." In 1927, the Legislature consolidated "the formerly distinct offenses of larceny, embezzlement,

1

and obtaining property by false pretenses . . . into the single crime of 'theft' defined by Penal Code section 484 . . . ." (*People v. Davis* (1998) 19 Cal.4th 301, 304.) Section 490a, part of the 1927 legislation, provides: "Whenever any law or statute of this state refers to or mentions larceny, embezzlement, or stealing, said law or statute shall hereafter be read and interpreted as if the word 'theft' were substituted therefor." Relying on some burglary cases that I discuss below, the majority treats section 490a literally and replaces the narrow word "larceny" in section 459.5 with the broader word "theft." In effect, the majority says that whenever the Legislature (or electorate) attempts to use the narrow word "larceny," that word is "auto corrected" to the broader word "theft." This auto correct process applies even when it is clear that the narrow word, and not the broader word, was intended.

The implications are troubling. Section 490a must not be interpreted literally, especially when doing so changes the meaning of substantive crimes. Automatically expanding the elements of a crime by autocorrecting a narrow word ("larceny") to a broad word ("theft") can create criminal liability where none was intended.

In addition to expanding criminal liability beyond anyone's intent, this auto correct process runs afoul of what we said recently in *People v. Vidana* (2016) 1 Cal.5th 632 (*Vidana*): "Our cases interpreting section 490a and the 1927 amendment to section 484 have repeatedly held that the legislation simplified the procedure of charging larceny, embezzlement, and false pretenses, but did not change their elements. . . . [S]ection 484 as amended 'merely . . . amalgamate[s] the crimes of larceny, embezzlement, false pretenses and kindred offenses under the cognomen of theft. No elements of the former crimes have been changed by addition or subtraction.' " (*Id*. at pp. 641-642 [quoting *People v. Myers* (1929) 206 Cal. 480, 483 (*Myers*)].) "The Legislature continues to use the terms 'larceny'

2

and 'embezzlement,' and to enact statutes using both terms, or both 'theft' and 'embezzlement.' " (*Vidana*, at p. 645; see *id*. at pp. 645-646 & fn. 14, citing numerous examples in the Pen. Code, the Bus. and Prof. Code, the Fin. Code, the Gov. Code, and the Veh. Code.)

In language the majority does not mention, we said this about section 490a: "The Court of Appeal in this case read section 490a as 'literally excising the words "larceny" and "embezzlement" from the legislative dictionary.' *That, of course, is not the case* as can be seen by the numerous statutory provisions delineated above using the terms larceny and embezzlement." (*Vidana*, *supra*, 1 Cal.5th at pp. 646-647, italics added.)

In language the majority does mention, but only in part (maj. opn., *ante*, at pp. 19-20), we added: "Moreover, literal application of section 490a would render many statutes nonsensical. Although this court long ago said that 'the essence of section 490a is simply to effect a change in nomenclature without disturbing the substance of any law' (*Myers*, *supra*, 206 Cal. at p. 485; accord, [*People v.*] *Williams* [(2013) 57 Cal.4th 776], 789), *it does not appear we have ever applied section 490a to effect a change in nomenclature or to change the language of any statute*." (*Vidana*, *supra*, 1 Cal.5th at p. 647, italics added to indicate some of the language the majority does not mention, fn. omitted.)

Critical here, we explained in more language the majority does not mention, "Nor does the Legislature's continued use of the terms 'larceny' (or 'theft') and 'embezzlement' in various statutes transform larceny and embezzlement into different offenses. Rather, these terms are simply *different ways of describing the behavior proscribed by those statutes*." (*Vidana*, *supra*, 1 Cal.5th at p. 649, italics added.) Similarly here, the word "larceny" describes the behavior section 459.5 proscribes.

Our other recent opinion, *People v. Williams* (2013) 57 Cal.4th 776 (*Williams*), is similar. *Williams* is a robbery case, not a theft case, but it is still instructive. We discussed the 1927 enactment and explained that, "[a]s we pointed out in [*People v. Ashley* (1954) 42 Cal.2d 246], the California Legislature's consolidation of larceny, false pretenses, and embezzlement into the single crime of theft did not change the elements of those offenses (*Ashley*, *supra*, 42 Cal.4th at p. 258), a fact that is significant to our analysis . . . ." (*Williams*, at p. 786.) In response to the dissent's reliance on section 490a, we said that the "dissent's theory would require us to conclude that, by enacting section 490a, the Legislature intended to alter two of the substantive elements of robbery: asportation and a trespassory taking. [Citation.] But the 1927 legislation enacting section 490a and the theft consolidation statute [citation] left unchanged the elements of theft. . . . As this court said more than 80 years ago, 'the essence of section 490a is simply to effect a change in nomenclature *without disturbing the substance of any law*.' (*People v. Myers* (1929) 206 Cal. 480, 485, italics added.)" (*Williams*, at p. 789.)

We are interpreting an initiative measure. Our goal is to discern the electorate's intent. The majority's interpretation of "shoplifting" would modify that term from its commonly understood meaning and expand it beyond all recognition. Shoplifting has always been understood to involve *larceny*, that is, the *stealing* of merchandise, not embezzlement and not false pretenses. Webster's Third New International Dictionary of the English Language (1981) defines "shoplifting" simply as "the stealing of goods on display in a store." (*Id*. at p. 2101.) Black's Law Dictionary goes into more detail. It defines shoplifting as "Theft of merchandise from a store or business; specif., *larceny* of goods from a store or other commercial establishment by willfully taking and concealing the merchandise with the intention of converting the goods to one's personal use

4

without paying the purchase price." (Black's Law Dict. (10th ed. 2014) p. 1590, col. I, italics added.)

These definitions do not remotely describe what defendant did. As the Attorney General notes, "One would be hard-pressed to find any California voter who would define fraudulently cashing forged and stolen checks as shoplifting."

The majority is correct that the common (or "colloquial," to use the majority's term) understanding must yield to the statutory definition when that definition does not comport with the common understanding. The statutory definition becomes its own term of art that must be given effect. (Maj. opn., *ante*, at p. 14.) However, the statutory definition of "shoplifting" *does* comport with the common understanding. Section 459.5, subdivision (a), uses the same word "larceny" to define the crime that Black's Law Dictionary uses. Only when the majority auto corrects "larceny" into "theft" does it change the statutory definition into something different from the common understanding. The word "larceny" is a precise term of art with a well-established meaning that the Legislature and initiative measures continue to use. When the Legislature or electorate uses that word to define an element of the crime, it intends that form of theft, not all forms of theft.

I do recognize that, in one respect, the statutory definition of "shoplifting" does diverge from the common understanding. It applies to anyone entering a commercial establishment with the intent to commit larceny and does not require an actual completed act of larceny. The common understanding of "shoplifting" no doubt contemplates an actual taking. This divergence from the common understanding was necessary to accomplish the obvious intent behind this part of the initiative — to replace felony burglary of a commercial establishment with misdemeanor shoplifting when the dollar amount is limited. If the crime of shoplifting had not been expanded in this way, the result would have been absurd:

5

A person who enters a store intending to steal, say, a six-pack of beer, but is foiled before actually stealing it, would be guilty of felony burglary, but the person who actually stole the beer would be guilty only of misdemeanor shoplifting.  The drafters of Proposition 47 knew how to diverge from the common understanding when that was their intent, and how to otherwise come within the common understanding by using the word "larceny," rather than "theft."

Proposition 47 itself uses both "larceny" when that word is intended, and "theft" when that word is intended.  For example, section 459.5, subdivision (b), provides:  "Any act of shoplifting as defined in subdivision (a) shall be charged with shoplifting.  No person who is charged with shoplifting may also be charged with burglary or *theft* of the same property."  (Italics added.)  Auto correcting "larceny" to "theft" means the drafters used the two words randomly even though they mean the same thing.  But the drafters did not randomly employ two different words to mean the same thing.  The two words have different meanings.  When the drafters used one word rather than the other, they meant that word, not the other.  As a recent Court of Appeal opinion put it, "This choice of wording within the statute at issue confirms the electorate thought larceny was something different than other forms of theft.  There would be no rational purpose for choosing different words to convey the same meaning if larceny and other forms of theft were intended to be wholly overlapping terms."  (*People v. Martin* (2016) 6 Cal.App.5th 666, 681, review granted Feb. 15, 2017, S239205 [shoplifting requires the intent to commit larceny, not some other form of theft].)

Noting that voters are presumed to be aware of existing laws, the majority assumes the voters were aware of a 1927 statute (§ 490a) — but for some reason were *not* aware of our long-standing interpretation of the statute as not changing the substance of any law, even though we reiterated that interpretation only a year before the election (*Williams*, *supra*, 57 Cal.4th at p. 789) — and, also being

6

aware of two burglary cases decided by the Court of Appeal, they would assume that when section 459.5 uses both "larceny" and "theft," words with well-established and distinct meanings, the statute really means "theft" each time, and never "larceny." (Maj. opn., *ante*, at pp. 11-12.)

This legal backdrop, given its lack of clarity, does not provide much basis to infer that the electorate intended to use the word "larceny" to mean "theft" and thereby dramatically depart from the common meaning of "shoplifting."

The ballot materials, a useful source of ascertaining voter intent (*People v. Morales* (2016) 63 Cal.4th 399, 406), demonstrate the voters' understanding that shoplifting was limited to its common understanding. The Legislative Analyst's analysis of Proposition 47 describes the shoplifting provision this way: "Under current law, shoplifting property worth $950 or less (*a type* of petty theft) is often a misdemeanor. However, such crimes can also be charged as burglary, which is a wobbler. Under this measure, shoplifting property worth $950 or less would always be a misdemeanor and could not be charged as burglary." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) analysis of Prop. 47 by Legis. Analyst, p. 35, italics added.) Any reasonable voter would be surprised to know that shoplifting is not only *a type* of theft, but incorporates *all types* of theft.

By adopting the auto correct process, the majority essentially says that the Legislature or electorate cannot use the word "larceny" to define a crime even when, as here (and in other statutes; see *Vidana*, *supra*, 1 Cal.5th at pp. 645-646 & fn. 14), that is the precise word intended. But how else should the drafters have defined the crime of shoplifting when they intended the common understanding of "larceny"?

Auto correcting "larceny" to "theft" in a statute that defines a crime expands the meaning of that crime, contrary to our long-standing interpretation that " 'the essence of section 490a is simply to effect a change in nomenclature

7

*without disturbing the substance of any law.' "* (*Williams*, *supra*, 57 Cal.4th at p. 789, quoting *Myers*, *supra*, 206 Cal. at p. 485.)  Because many statutes even today use the precise words "larceny" or "embezzlement" to describe or define an element of a crime, we should not automatically expand the meaning of those words.

The majority relies on cases involving burglary.  Doing so is reasonable because those cases do, indeed, support its holding.  The burglary statute contains, and has contained since the Penal Code was originally enacted in 1872, the same word "larceny" to describe the required intent.  Specifically, it requires the "intent to commit grand or petit larceny or any felony."  (§ 459.)  Because the shoplifting statute was intended to replace a burglary charge with the less serious shoplifting charge in some circumstances, presumably the word "larceny" will have the same meaning in the burglary statute as in the shoplifting statute.

As the majority explains, some cases have interpreted section 490a as changing the meaning of "larceny" in the burglary statute to the broader term "theft."  Rather than endorsing those cases, however, we should disapprove them. They are inconsistent with what we said long ago in *Myers*, *supra*, 206 Cal. 480, and more recently in *Vidana*, *supra*, 1 Cal.5th 632, and *Williams*, *supra*, 57 Cal.4th 776, that section 490a simply effects a change in nomenclature but does not disturb the *substance* of any law.

The only cases applying section 490a to auto correct "larceny" in the burglary statute to "theft" in actual holdings appear to be *People v. Nguyen* (1995) 40 Cal.App.4th 28 and *People v. Dingle* (1985) 174 Cal.App.3d 21.  (*People v. Bayne* (1934) 136 Cal.App. 341 had an odd procedural posture and, in any event, appears to have involved larceny.)  They did so with little analysis or seeming understanding of the holding's implications.  The analysis in *Nguyen* consists of a single paragraph mechanistically applying a broad understanding of section 490a.

8

(*Nguyen*, at p. 31.) *Dingle*'s reasoning is similarly unpersuasive. Although the court acknowledged that the merger of the three separate crimes "did not change the elements of the former crimes" (*Dingle*, at p. 29), it nevertheless held that section 490a changed the elements of burglary (*id*. at p. 30). The holding of these cases — the 1927 legislation changed the meaning of burglary by expanding the intent to commit larceny to include the intent to commit embezzlement and false pretenses — is contrary to *Myers*'s explanation that section 490a did *not* disturb "the substance of any law." (*Myers*, *supra*, 206 Cal. at p. 485.)

This court has never squarely confronted the question. In *People v. Parson* (2008) 44 Cal.4th 332, we cited one of the Court of Appeal cases with approval. (*Id*. at p. 354, citing *People v. Nguyen*, *supra*, 40 Cal.App.4th 28.) But, as we explained in *Parson*, the trial court's instruction on burglary was limited to the larceny form of theft. It did not cover any other form of theft. (*Parson*, at pp. 352-353.) Accordingly, the reference to *Nguyen* was dicta. In *Williams*, the defendant was charged with robbery, and we hypothesized in a footnote, without citation to authority, that "if a defendant enters a store with the intent to commit theft by false pretenses (as defendant did here), and if that defendant, while fleeing, kills a store employee, that defendant can be convicted of felony-murder burglary." (*Williams*, *supra*, 57 Cal.4th at p. 789, fn. 4.) But that language, too, was dicta and did not carefully consider this question.

When the Legislature used the common law word "larceny" in 1872 in defining burglary, it meant larceny, not embezzlement and not false pretenses. In 1927, when the Legislature changed the law of *theft*, it did not also, sub silentio, change the law of *burglary*.

The early case of *Myers*, *supra*, 206 Cal. 480, does not support the majority's holding. It involved larceny and no other form of theft. (*Id*. at p. 481.) The trial court ordered the information amended to say "theft" instead of

9

'larceny." (*Ibid.*) On appeal, this court rejected the defendant's argument that the amended information failed to state a crime. (*Id.* at pp. 481-482.) We observed that "the words 'theft' and 'larceny' are so nearly convertible terms that defendant could in no sense have been misled by the use of one term or the other." (*Id.* at p. 482.) We rejected the defendant's argument that section 484, which had defined "larceny," had been repealed by the 1927 legislation, resulting in the removal of the element of larceny. We concluded that section 484 had simply been amended to include false pretenses and embezzlement, as well as larceny, but none of the elements of these crimes had been changed. (*Id.* at p. 483.) Nothing in *Myers* suggests the 1927 legislation substantively changed the definition of "burglary."

Expanding the definition of "burglary" this way has troubling implications. Combined with the shoplifting statute, it would mean, for example, that an accountant who works for a store and who embezzles $20 dollars when the store is open for business would be guilty of shoplifting only, but guilty of burglary if the embezzlement occurs five minutes before or after the store closes to the general public. The same accountant who enters his or her office at a business that is not a commercial establishment would be guilty of burglary *any time* the person enters the office intending to commit embezzlement. Nobody would consider a person's entering his or her own office with intent to embezzle $20 to be burglary, but that is the effect of the burglary cases.

Moreover, a person who enters a friend's house intending to defraud someone out of a few dollars — perhaps at a poker game — would be guilty not only of burglary, but of *first degree residential burglary*. (§ 460, subd. (a).)

I hope and expect that no prosecutor would actually overcharge such cases as burglary. But the majority's opinion is an invitation to do so. Entering a bank intending to cash a fraudulent check is not entering with the intent to commit larceny. We should not transform the common understanding of "larceny" in this

10

statute (and numerous other statutes) the way the majority does. *Myers*, *Williams*, and *Vidana* correctly stated that section 490a did not change the substance of any law. *Vidana* was correct that section 490a does not literally excise the words "larceny" and "embezzlement" from the legislative dictionary. The 1927 legislation did not expand the elements of burglary.

Rather than embrace the burglary cases, we should disapprove the Court of Appeal cases that expanded the definition of the crime of burglary and disavow our dicta in *People v. Parson*, *supra*, 44 Cal.4th 332, and *Williams*, *supra*, 57 Cal.4th 776. Section 490a must not be taken literally. The Legislature or electorate should be allowed to continue to use a word such as "larceny" when, as here, that word conveys the intended meaning.

We should avoid much mischief by concluding that defendant did not commit shoplifting and, therefore, Proposition 47 does not operate to reduce his conviction to a misdemeanor.

CHIN, J.

I CONCUR:

LIU, J.

11

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Gonzales

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 242 Cal.App.4th 35
**Rehearing Granted**

_____

**Opinion No.** S231171
**Date Filed:** March 23, 2017

_____

**Court:** Superior
**County:** Imperial
**Judge:** L. Brooks Anderholt

_____

**Counsel:**

Richard A. Levy, under appointment by the Supreme Court; and Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

Stephen P. Lipson, Public Defender (Ventura), Michael C. McMahon, Chief Deputy Public Defender, and William M. Quest, Deputy Public Defender, for California Public Defenders Association and Public Defender of Ventura County as Amici Curiae on behalf of Defendant and Appellant.

Kamala D. Harris, Attorney General, Kathleen A. Kenealy, Acting Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steven T. Oetting, Deputy State Solicitor General, Michael Pulos, Arlene A. Sevidal, Christen E. Somerville and Alastair Agcaoili, Deputy Attorneys General, for Plaintiff and Respondent.

Bonnie M. Dumanis, District Attorney (San Diego), James E. Atkins and Brooke E. Tafreshi, Deputy District Attorneys, for San Diego County District Attorney as Amicus Curiae on behalf of Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Richard A. Levy
3868 West Carson Street, Suite 205
Torrance, CA  90503-6706
(310) 944-3311

Alastair Agcaoili
Deputy Attorney General
600 West Broadway, Suite 1800
San Diego, CA  92101
(619) 738-9063