Filed 5/24/18

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| In re E.P., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>E.P.,<br><br>    Defendant and Appellant. | G054375<br><br>(Super. Ct. No. 16DL0229)<br><br>O P I N I O N |


Appeal from a judgment of the Superior Court of Orange County, Lewis W. Clapp, Judge.  Reversed in part and affirmed in part.

Erica Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Michael Pulos, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

The juvenile court found minor E.P. committed second degree burglary (Pen. Code, §§ 459, 460, subd. (b) [count 1]; all statutory references are to the Penal Code unless noted), possession of graffiti tools (§ 594.2, subd. (a) [count 2]), receiving stolen property (§ 496, subd. (a) [counts 4-6]), and illegal possession of an alcoholic beverage (Bus. & Prof. Code, § 25662, subd. (a) [count 7]).  E.P. contends we must reverse the burglary finding (count 1) because the evidence shows he committed the new crime defined by the Legislature as shoplifting, but not burglary.  He further asserts we must reverse the findings he received stolen property (counts 4-6) because he cannot be convicted of both shoplifting and receiving the same property.  We agree and therefore reverse the findings on these counts, and affirm count 2.

I

FACTUAL AND PROCEDURAL BACKGROUND

Anaheim ICE is a public ice hockey facility with two professional-sized ice rinks and a shop.  Between the ice rinks are offices, referee locker rooms, and locker rooms for the players, who must pay to use the rink.

On December 22, 2015, between 10:00 and 11:00 p.m., a hockey referee working a game spotted E.P. and a companion lingering around the locker rooms. The pair walked in and out of the locker rooms several times.

Three players reported items missing from the locker room.  One player stated someone had stolen his keys, cell phone, and wallet from his jacket, which he had placed on a locker room bench.  A second player reported his pants, wallet, keys, and phone were missing from the bag he left in the locker room.  A third player stated someone had taken his wallet, containing credit cards, an amusement park annual pass, and his cell phone from the pants he left on a locker room shelf.

Anaheim police officers responded promptly and detained three youths, including E.P., outside a closed fast food restaurant about a block and a half from the

2

rink. E.P. consented to a search, and officers discovered the property stolen from the locker room.

Officer Olmedo arrested E.P., advised him of his *Miranda* rights and questioned him about the thefts. E.P. admitted possessing the spray paint can officers also found in his possession, explaining he was a tagger, but he initially denied involvement in the thefts. During a later conversation, E.P. admitted he went inside the facility to watch hockey with another "kid" he could not identify. This youth took "stuff" from the locker room and ran out the back of the facility. E.P. eventually admitted stealing a wallet, cell phones, a jersey, an alcohol bottle, and credit cards from the locker room.

In August 2016, the juvenile court sustained the allegations of the petition. In rejecting E.P.'s challenge to the burglary charge, the court concluded the ice rink's locker rooms were not part of the commercial establishment and the crime of shoplifting required the offender to steal from the business, not from private citizens. Consequently, the court declared E.P. a ward of the court, and placed him on probation.

II

DISCUSSION

A.  *Insufficient Evidence Supports the Burglary Finding*

E.P. contends the juvenile court erred when it found E.P.'s theft of items taken from an open locker room inside a commercial hockey rink was a burglary rather than the crime of shoplifting. Based on the reasoning in decisions issued after the court found E.P. committed a burglary, we agree.

In November 2014, the electorate enacted Proposition 47, "the Safe Neighborhoods and Schools Act," which amended existing statutes to reduce penalties for certain theft and drug offenses, and added several new provisions. Per its preamble, the stated purpose was "'to ensure that prison spending is focused on violent and serious offenses'" and to "'[r]equire misdemeanors instead of felonies for nonserious, nonviolent

3

crimes like petty theft and drug possession.'" (*People v. Romanowski* (2017) 2 Cal.5th 903, 909.) "Proposition 47 directs that the 'act shall be broadly construed to accomplish its purposes.'" (*People v. Jimenez* (2018) __Cal.App.5th __.)

To accomplish its goal of requiring misdemeanors for nonserious, nonviolent crimes like petty theft, Proposition 47 created a new misdemeanor crime of "shoplifting," which covers conduct that previously would have been classified as a burglary. (*In re J.L.* (2015) 242 Cal.App.4th 1108, 1112. (*J.L.*).) Codified in section 459.5, this new crime is defined in subdivision (a) as follows: "Notwithstanding Section 459, shoplifting is defined as entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950). Any other entry into a commercial establishment with intent to commit larceny is burglary." Subdivision (b) expressly limits the prosecutor's charging discretion: "Any act of shoplifting as defined in subdivision (a) shall be charged as shoplifting. No person who is charged with shoplifting may also be charged with burglary or theft of the same property."

In determining whether the court erred, we accept the court's factual findings if supported by substantial evidence, but review de novo the court's legal conclusion the ice rink's locker room was not part of a "commercial establishment" within the meaning of section 459.5. (*People v. Hallam* (2016) 3 Cal.App.5th 905, 912 (*Hallam*).) Here, the juvenile court concluded that although the locker room was in a commercial establishment, the locker room was for the use of "private citizens" and therefore not part of the commercial establishment. The court did not consider the theft of private property to be shoplifting, explaining that shoplifting requires "stealing property from a commercial establishment, not from private citizens." Later decisions interpreting section 459.5 have rejected this reasoning.

4

In *Hallam, supra,* 3 Cal.App.5th 905, the defendant entered a computer store during business hours and used the employee restroom with express permission. He then left the store, but reentered through the back door. He returned to the employee restroom and stole an air compressor worth $350. Observing that the employee restroom was not an area to which the public generally had access, the district attorney argued the defendant intended to steal an item that belonged to the store, but was not store merchandise.

*Hallam* rejected the Attorney General's argument a "room within the business where the buying and selling of goods or services does not occur" could not be part of the "commercial establishment." (*Hallam, supra,* 3 Cal.App.5th at p. 912.) "Turning to the words of the statute here, we find no indication that shoplifting can occur only in specific areas of a commercial establishment. Nor does there appear any requirement that the business's commercial activity must be taking place in the area from which the theft occurs in order to qualify the offense as shoplifting. The trial court thus added an element to the offense that is absent from the plain language of the statute itself when it determined that appellant's theft would qualify as shoplifting only if it occurred in an area of the commercial establishment open to the public where merchandise is sold. Based on its impermissible revision of the definition of shoplifting, the court concluded that the crime was burglary rather than shoplifting because appellant entered the store through the back and stole an item from the employee restroom rather than an area of the store that was 'open for business.'" (*Id.* at p. 912.)

*Hallam* distinguished *J.L.*, 242 Cal.App.4th 1108, which held entry into a public high school locker room to steal property did not qualify as shoplifting. *Hallam* stated, "*J.L.*, however, . . . applied its commonsense interpretation of 'commercial establishment' not to a single room or area within a commercial venue, but to an entire school facility, and concluded that '[a] public high school is not an establishment primarily engaged in the sale of goods and services; rather, it is an establishment

5

dedicated to the education of students.' [¶] In contrast to the public high school in *J.L.*, [the computer store] unquestionably qualifies as a 'commercial establishment' within the meaning of section 459.5, subdivision (a). We find nothing in *J.L.*'s discussion of schools to inform our decision as to whether shoplifting includes the entry into any area of a commercial establishment during business hours, whether open to the public or not, as long as the establishment as a whole is open for business." (*Hallam, supra,* 3 Cal.App.5th at pp. 912-913.)

Our Supreme Court's recent decision in *People v. Gonzales* (2017) 2 Cal.5th 858 (*Gonzales*), is instructive. There, the defendant pleaded guilty to second degree burglary after he forged his grandmother's signature on two of her checks, entered a bank, and cashed them for a total of $250. The defendant appealed the denial of his petition to redesignate his burglary conviction as misdemeanor shoplifting. The court concluded the shoplifting statute applied because the term "larceny" in section 459.5 encompassed the nonlarcenous offense of theft by false pretenses committed when the defendant entered the bank to pass a forged check. The court construed the term "larceny" to mean theft because section 484 expansively defines a general crime of "theft" to include elements of larceny, false pretenses, and embezzlement. Further, section 490a states that "'[w]herever *any law or statute of this state* refers to or mentions larceny, embezzlement, or stealing, said law or statute shall hereafter be read and interpreted as if the word "theft" were substituted therefor.'" (*Id.* at p. 866.) Thus, the court held the term "larceny" in the shoplifting statute must be interpreted to encompass theft by larceny, false pretenses, or embezzlement, just as it does in the general burglary statute.

Resisting this conclusion, the Attorney General in *Gonzales* argued that "use of the term 'larceny' in section 459.5, coupled with labeling the offense 'shoplifting,' exhibited an intent by the electorate to limit that offense to the 'common understanding of shoplifting,' which she characterizes as taking goods from a store."

6

(*Gonzales, supra,* 5 Cal.5th at pp. 868-869.) The court rejected the Attorney General's argument because "the language of section 459.5 refers to the general burglary statute and imports the term 'larceny' strongly suggests an intent that the term maintain its same meaning in both provisions, including application of section 490a." (*Id.* at p. 869.) The court also rejected the Attorney General's argument that the electorate intended to limit shoplifting to the theft of "tangible merchandise" because the shoplifting statute uses the term "property," rather than the more expansive phrase "money, labor, real or personal property" found in section 490.2.[1] (*Id.* at pp. 870-871.) The court explained "section 459.5 provides a specific definition of the term 'shoplifting.' In doing so, it creates a term of art, which must be understood as it is defined, not in its colloquial sense. Indeed, by defining shoplifting as an *entry* into a business with an intent to steal, rather than as the taking itself, section 459.5 already deviates from the colloquial *understanding* of that term." (*Id.* at pp. 870-871, second italics added.) The court also found no intent to use a narrower definition of the term "property" in the shoplifting statute than the definition of the same term in section 7, which defines property to include "both real and personal property." (*Ibid.*)

Pertinent here, the Attorney General in *Gonzales* argued "it would be absurd for the shoplifting statute to encompass any form of theft other than larceny *of openly displayed merchandise*," otherwise, section 459.5 "would require a person to be prosecuted for shoplifting even if he enters a commercial establishment to commit a theft

---

[1] Section 490.2, subdivision (a), provides: "(a) Notwithstanding Section 487 or any other provision of law defining grand theft, obtaining any property by theft where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950) shall be considered petty theft and shall be punished as a misdemeanor, except that such person may instead be punished pursuant to subdivision (h) of Section 1170 if that person has one or more prior convictions for an offense specified in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or for an offense requiring registration pursuant to subdivision (c) of Section 290."

from an area of the store closed to the public, "'like a back office *or a private locker room . . . .*'" (*Gonzales, supra*, 2 Cal.5th at p. 873, italics added.)  The court observed this argument was "little more than a restatement of the rejected claim that the electorate intended to use 'shoplifting' in the colloquial sense."  (*Id*. at pp. 873-874.)  The court explained if the voters had intended to limit the shoplifting statute to retail merchandise, "it could have done so by using language similar to that in section 490.5."  (*Id*. at p. 874.)[2]

Here, the Attorney General relies on *People v. Garcia* (2016) 62 Cal.4th 1116 (*Garcia*) to support his argument shoplifting does not include an entry into an area of a commercial establishment closed to the public.

In *Garcia*, the defendant suffered two burglary convictions, one resulting from his entry into a store to commit robbery, followed by another when he entered the store's restroom to rape an employee.  The Supreme Court found insufficient evidence to support the second burglary conviction.  *Garcia* explained:  "Where a burglar enters a

_____

[2]        Section 490.5, subdivision (g)(1), provides, "As used in this section:  [¶] (1) 'Merchandise' means any personal property, capable of manual delivery, displayed, held or offered for retail sale by a merchant.  [¶]  (2) 'Merchant' means an owner or operator, and the agent, consignee, employee, lessee, or officer of an owner or operator, of any premises used for the retail purchase or sale of any personal property capable of manual delivery.  [¶]  (3) 'Theater owner' means an owner or operator, and the agent, employee, consignee, lessee, or officer of an owner or operator, of any premises used for the exhibition or performance of motion pictures to the general public.  [¶]  (4) The terms 'book or other library materials' include any book, plate, picture, photograph, engraving, painting, drawing, map, newspaper, magazine, pamphlet, broadside, manuscript, document, letter, public record, microform, sound recording, audiovisual material in any format, magnetic or other tape, electronic data-processing record, artifact, or other documentary, written or printed material regardless of physical form or characteristics, or any part thereof, belonging to, on loan to, or otherwise in the custody of a library facility.  [¶]  (5) The term 'library facility' includes any public library; any library of an educational, historical or eleemosynary institution, organization or society; any museum; any repository of public records."

structure enumerated under section 459 with the requisite felonious intent, and then subsequently enters a room within that structure with such intent, the burglar may be charged with multiple burglaries only if the subsequently entered room provides a separate and objectively reasonable expectation of protection from intrusion relative to the larger structure. Such a separate expectation of privacy and safety may exist where there is proof that the internal space is owned, leased, occupied, or otherwise possessed by a distinct entity; or that the room or space is secured against the rest of the space within the structure, making the room similar in nature to the stand-alone structures enumerated in section 459." (*Garcia, supra,* 62 Cal.4th at pp. 1119-1120.)

*Garcia* identified several characteristics that might indicate an interior room shares the enhanced expectation of privacy and security of a stand-alone structure, including a locked door and signs to prevent unauthorized access. (*Garcia, supra,* 62 Cal.4th at p. 1129.) Such features demonstrate "a separate and objectively reasonable expectation of protection from intrusion, distinct from that provided by the security of the overarching structure." (*Id*. at p. 1127.) The court concluded insufficient evidence supported a burglary of the bathroom because it offered only "a limited transitory source of privacy" based on the bathroom's location and the absence of evidence the bathroom was left locked to the public. (*Id*. at p. 1132.)

Assuming without deciding that *Garcia* applies in this context, no evidence showed the locker room was locked or other measures were taken to prevent unauthorized access, such as signs prohibiting access. The locker room was located between the ice rinks, presumably to allow customers easy access to and from the rinks. At most, the evidence shows no more than a "limited transitory sense of privacy." (*Garcia, supra,* 62 Cal.4th at p. 1132.)

*Garcia* aside, the Attorney General asserts the locker room was not part of the Anaheim ICE's commercial establishment. He argues *Hallam* was wrongly decided and notes the Supreme Court granted review in *People v. Colbert* (2016) 5 Cal.App.5th

9

385, review granted February 15, 2017, S238954, H042499, to decide the following issue: "Did defendant's entry into separate office areas of a commercial establishment that were off-limits to the general public constitute an 'exit' from the 'commercial' part of the establishment that precluded reducing his conviction for second degree burglary to misdemeanor shoplifting under Penal Code section 459.5?" In *Colbert*, the evidence showed the defendant entered the private offices of a convenience store and a gas station to steal about $300 on each occasion. The appellate court affirmed the denial of the defendant's petition to designate his crimes as shoplifting. Regardless how the court decides this issue, the evidence here shows the locker room was part of the commercial establishment.

Anaheim ICE's locker rooms were located between the ice rinks, facilitating player and referee access. No evidence showed management locked the locker rooms, displayed signs prohibiting entry, or took other steps to prevent public access by family, friends, or bystanders watching the skaters. To the contrary, the evidence establishes a public use. The players' use of the locker rooms shows Anaheim ICE offered this amenity to its customers, a feature presumably reflected in the fees the facility charged its customers. The evidence does not support the Attorney General's contention the locker room was not part of Anaheim ICE's commercial establishment.

The Attorney General also argues E.P. failed to produce evidence the locker room, or Anaheim ICE, was open to the public during regular business hours and the value of the stolen items was less than $950. Although E.P.'s appeal essentially challenges the sufficiency of the evidence to support the finding he committed burglary, the Attorney General's argument, in effect, places the burden of production on E.P. to establish as an affirmative defense the crime of shoplifting, without offering any legal argument to support this assertion. Courts may place on the defendant the burden of proving an exonerating fact "'if its existence is "peculiarly" within [a defendant's] personal knowledge and proof of its nonexistence by the prosecution would be relatively

10

difficult or inconvenient."' (*People v. Mower* (2002) 28 Cal.4th 457, 477.) That is not the case here. The prosecution had no difficulty in gathering the evidence to determine whether it could prove the elements of a burglary or whether it should charge E.P. with shoplifting. Consequently, the prosecution bore the burden to show the charged offense was burglary. Because there was no evidence showing Anaheim ICE was closed, and the evidence showed the facility was being used for its intended commercial purpose, the Attorney General's argument is unavailing. The same analysis applies to the Attorney General's argument about the value of the stolen items.

Finally, we note our decision comports with the stated goals of Proposition 47, which declares the "act shall be broadly construed to accomplish its purposes." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, p. 74, § 15 (Voter Information Guide).) "One of Proposition 47's primary purposes is to reduce the number of nonviolent offenders in state prisons, thereby saving money and focusing prison on offenders considered more serious under the terms of the initiative." (*Harris v. Superior Court* (2016) 1 Cal.5th 984, 992.) The Act "also expressly states an intent to '[r]equire misdemeanors instead of felonies for nonserious, nonviolent crimes like petty theft and drug possession, unless the defendant has prior convictions for specified violent or serious crimes.'" (*Gonzales, supra*, 2 Cal.5th at p. 870; see Voter Information Guide, text of Prop. 47, § 3, par. (3), p. 70.) Accordingly, we reverse the juvenile court's order declaring E.P.'s offense a second degree burglary.

B.   *Receiving Stolen Property (Counts 4-6)*

E.P. argues "[b]ecause [he] committed an act of shoplifting, he cannot also be prosecuted for the crimes of receiving stolen property. One cannot be convicted of both stealing and receiving the same property." (See § 459.5, subd. (b) ["[a]ny act of shoplifting . . . shall be charged as shoplifting. No person who is charged with shoplifting may also be charged with burglary or theft of the same property"]; § 496, subd. (a) [every person who conceals or withholds stolen property from the owner

11

knowing the property is stolen commits a crime; a principal in the actual theft of the property may be convicted pursuant to this section but no person may be convicted both pursuant to this section and of the theft of the same property]; *People v. Ceja* (2010) 49 Cal.4th 1, 3 [theft conviction operates as a bar to a receiving conviction].)  The Attorney General concedes the point.  We accept the concession and reverse the juvenile court's findings on counts 4, 5, and 6.

III

DISPOSITION

The judgment finding the minor committed burglary (count 1) and receiving stolen property (counts 4, 5, and 6) is reversed.  The judgment finding possession of graffiti tools (count 2) is affirmed.


ARONSON, ACTING P. J.

WE CONCUR:


FYBEL, J.


THOMPSON, J.

12